Laura UNVERFERTH, Joseph
Cusumano, and Francis
Cusumano, Appellants,

v.

CITY OF FLORISSANT and American
Traffic Solutions, Inc.,
Respondents.

No. ED 98511.

Missouri Court of Appeals,
Eastern District,
Division I.

Sept. 10, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied Oct.
22, 2013.

Application for Transfer Denied
Feb. 25, 2014.

John G. Simon, Ryan A. Keane, The Simon Law Firm, St. Louis, MO, for appellants.

John M. Hessel, Mark R. Sowers, Lewis, Rice & Fingersh, L.C., St. Louis, MO, for respondent City of Florissant.

Jane E. Dueker, Nicholas G. Frey, Stinson Morrison Hecker LLP, ST. Louis, MO, for respondent American Traffic Solutions, Inc.

KURT S. ODENWALD, Judge.

## Introduction

Appellants Laura Unverferth ("Unverferth") and Joseph and Francis Cusumano ("Cusumanos") (collectively, "Appellants") appeal from the judgment of the trial court granting motions to dismiss filed by Respondents City of Florissant ("Floris- sant") and American Traffic Solutions, Inc. ("ATS") (collectively, "Respondents"). Appellants received red light camera tickets from Florissant stating that they had committed a "Violation of Public Safety (Failure to Stop at a Red Light)" in violation of a Florissant municipal ordinance ("the Ordinance"). Appellants challenged the validity of the Ordinance in a six-count petition. Appellants alleged the Ordinance violated their due process rights and the privilege against self-incrimination, sought declaratory judgment regarding the validity and constitutionality of the Ordinance and its enforcement, and asserted a claim of civil conspiracy against Florissant and ATS. Unverferth also asserted claims of unjust enrichment against Florissant and ATS.

Florissant and ATS filed motions to dismiss Appellants' petition alleging, *inter alia*, that Appellants' constitutional claims should be dismissed on the bases of standing, waiver, and estoppel. The trial court agreed and granted Respondents' motions to dismiss on those grounds. The trial court then addressed the substantive issues raised by Appellants and dismissed each count with prejudice. Appellants now appeal the trial court's judgment.[1]

Because the Cusumanos have an adequate remedy at law in their municipal court proceeding, we affirm the trial court's judgment with regard to its dismissal of all of the Cusumanos' claims.

With regard to the claims brought by Appellant Unverferth, we reverse the judgment of the trial court dismissing Unverferth's claims on the bases of standing and waiver. Because Unverferth has pleaded sufficient facts to defeat Respondents' claim of estoppel, we reverse the

---

1. Appellants do not appeal the dismissal of their civil conspiracy or self-incrimination claims.

trial court's judgment dismissing Unverferth's claims due to estoppel and remand that issue to allow for discovery and further proceedings consistent with this opinion.

We further reverse that portion of the trial court's judgment declaring the Ordinance valid and dismissing Count I because it was enacted with proper authority and is consistent with state law. Appellants have pleaded that Florissant exceeded its authority under its police power to enact the Ordinance because the purpose of the Ordinance is to raise municipal revenue and not to regulate traffic or promote safety. Whether the Ordinance is a revenue-generating scheme advanced under the guise of Florissant's police power is a factual question not appropriate for resolution on Respondents' motions to dismiss. We remand this portion of the trial court's judgment for proceedings consistent with this opinion. In addition, Appellants have adequately pleaded and we hold that the Ordinance conflicts with Missouri law because it regulates moving violations without requiring the municipal court to report the violation to the Director of Revenue as required by Missouri statute. We reverse the judgment of the trial court dismissing Appellants' claim for declaratory judgment because the Ordinance conflicts with state statutes regulating moving violations.

With regard to Appellants' claims relating to procedural due process, Appellants have adequately pleaded that the Ordinance has denied them notice, a fair hearing and adequate procedural protections as required under Missouri Supreme Court Rules and Article I, Section 10 of the Missouri Constitution. Whether the Ordinance, as enacted or applied, violated Appellants' procedural due process rights is a factual question that is not appropriate for resolution on Respondents' motions to dismiss. Appellants are entitled to pursue

discovery and present facts in support of their properly pleaded allegations. Accordingly, we reverse that portion of the trial court's judgment dismissing the allegations contained in Counts I and IV relating to the denial of adequate procedural protections, notice, and fair hearing, and remand those issues to the trial court for proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

*Factual and Procedural History*

Appellants are vehicle owners who received a Notice of Violation from Florissant for violating Florissant's red light camera ordinance, which authorizes the use of automated cameras to enforce "violations of public safety." Under the Ordinance, a person commits the offense of violation of public safety "when such person fails to comply with the rules and regulations when a steady red signal appears at an intersection and the violation is detected through the automated red light enforcement system...." The Ordinance includes a rebuttable presumption that the owner of the vehicle was the driver at the time and place the violation occurred. The Ordinance does not provide a specific penalty for violations.

To enforce the Ordinance, Florissant contracted with ATS to install and operate red light cameras at various intersections within the city. The cameras are positioned to record an image of the rear portion of the vehicle and license plate as it enters the intersection. Upon reviewing recorded images that capture an alleged violation of the Ordinance, a police officer with the Florissant Police Department completes a Notice of Violation and sends it to the owner of the vehicle. Should the vehicle have more than one registered owner, the violation is addressed to the primary owner, or the first listed owner if

there is no primary owner. The recipient of the Notice of Violation is informed that probable cause exists to believe that he or she committed the offense of "Violation of Public Safety (Failure to Stop at a Red Light)" and is directed to pay a $100 fine to the Florissant Municipal Court. The Notice of Violation states that the violation is a non-moving infraction and no points will be assessed to the recipient's license. The Notice of Violation also informs the recipient that payment of the fine constitutes an "admission of guilt or liability."

If the recipient of the Notice of Violation fails to pay the fine by the due date listed on the notice, Florissant police send the alleged violator a Notice to Appear. The Notice to Appear informs the recipient that he or she has failed to respond in a timely manner to the Notice of Violation issued to the vehicle registered in his or her name. The Notice to Appear provides a new due date for payment of the fine, and states that if payment is not received prior to that date, the recipient must appear at Florissant Municipal Court at a specified date and time. The recipient is further admonished that failure to appear in court or to pay the fine "will cause this matter to be submitted to a collections agency in accordance with applicable state and federal collection laws and additional fees to be levied against you. It is in your best interest to pay this immediately."

Appellants filed a class action petition challenging the Ordinance on August 19, 2011. Unverferth sought to represent a class of Missouri citizens who received a Notice of Violation pursuant to the Ordinance and paid the $100 fine. The Cusumanos sought to represent Missouri citizens who received a Notice of Violation pursuant to the Ordinance, had not paid their fines, and whose violations were out-

standing.[2] Appellants' petition alleged six counts: declaratory judgment (Count I); unjust enrichment against Florissant on behalf of Unverferth (Count II); violation of the prohibition against self-incrimination under Article I, Section 19 of the Missouri Constitution (Count III); violation of due process under Article I, Section 10 of the Missouri Constitution (Count IV); civil conspiracy against Florissant and ATS (Count V); and unjust enrichment against ATS on behalf of Unverferth (Count VI). Unverferth sought monetary damages for the unjust enrichment alleged under Counts II and VI, the constitutional claims in Counts III and IV, and the civil conspiracy theory brought in Count V. All Appellants sought declaratory and injunctive relief for Counts I, III, and IV.

Florissant and ATS each filed a motion to dismiss Appellants' petition. On May 9, 2012, the trial court entered its Order and Judgment dismissing all of Appellants' claims with prejudice. Appellants now appeal the dismissal of their claims.

*Points on Appeal*

Appellants raise five points on appeal. First, Appellants claim the trial court erred in declaring the Ordinance valid because the Ordinance conflicts with state law on the same subject. Second, Appellants contend that the trial court erred in finding the Ordinance valid because the Ordinance was not enacted pursuant to Florissant's statutory authority or police power. In their third point on appeal, Appellants aver that the trial court erred in finding the Ordinance valid because the Ordinance deprives Appellants of their procedural due process rights. Appellants' fourth point on appeal contends that the trial court erred in dismissing their

**2.** The trial court never certified these proposed classes, and Appellants have not raised

any issues relating to class certification on this appeal.

constitutional claims on the bases of standing, waiver, and estoppel. In the fifth and final point on appeal, Appellants assert that the trial court erred in dismissing Unverferth's claim for unjust enrichment.

### Standard of Review

■ Review of a trial court's order granting a motion to dismiss is *de novo*. *Fenlon v. Union Elec. Co.*, 266 S.W.3d 852, 854 (Mo.App.E.D.2008) (*citing Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. banc 2007)). A motion to dismiss tests only the adequacy of plaintiffs petition to determine whether the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted in that case. *Otte v. Edwards*, 370 S.W.3d 898, 900 (Mo.App.E.D.2012). When reviewing a motion to dismiss, this Court assumes that all facts in plaintiff's petition are true, and we must give the plaintiff the benefit of every favorable inference which may be reasonably drawn from the facts pleaded. *Rook v. Pub. Sch. Ret. Sys. of City of St. Louis*, 593 S.W.2d 905, 906 (Mo.App.E.D.1980).

### Discussion

### I. Standing, Waiver, and Estoppel

We first address Appellants' fourth point on appeal, which addresses the threshold issues of standing, waiver, and estoppel. Appellants argue that the trial court erred in finding that Unverferth was precluded from bringing her claims because she lacked standing, waived her claims, and was estopped from bringing them. Appellants also contend that the trial court erred in dismissing the Cusumanos' claims for declaratory and injunctive relief because they have an adequate remedy at law.

A. *The trial court erred in finding Unverferth lacked standing.*

Appellants first dispute the trial court's finding that Unverferth lacked standing to challenge the procedural due process provided by the Ordinance because she did not avail herself of such procedures.

■ It is well settled that a party has standing to challenge the validity of an ordinance if standing is expressly conferred by statute or another applicable ordinance, or if the party can demonstrate that he or she is directly and adversely affected by the ordinance. *Miller v. City of Manchester*, 834 S.W.2d 904, 906 (Mo. App.E.D.1992). A party whose rights are or may be injuriously affected by the enforcement of an ordinance may attack its validity in proper proceedings. *State ex rel. City of St. Louis v. Litz*, 653 S.W.2d 703, 706 (Mo.App.E.D.1983) ("Any party who alleges they are directly adversely affected by an ordinance may raise the question of the unconstitutionality or invalidity of the ordinance."). Standing relates to a party's personal stake in the outcome of a proceeding. *Id.*

■ The petition sufficiently alleges that Unverferth was directly affected by the Ordinance. The petition avers that Unverferth received a Notice of Violation and that she was deprived of property in the form of the $100 fine. Despite these allegations, the trial court found that Unverferth lacked standing to challenge the constitutionality of the Ordinance because she did not avail herself of the procedure established by the Ordinance to contest the violation. In so holding, the trial court relied on cases that are factually distinguishable from the case at hand. *See Belton v. Bd. of Police Com'rs of Kansas City*, 708 S.W.2d 131, 138–39 (Mo. banc 1986) (noting in dicta that appellant would not have standing to challenge the constitutionality of a statute that was not invoked); *State v. Stottlemyre*, 35 S.W.3d 854, 861 (Mo.App.W.D.2001) (appellant lacked

standing to challenge statute as amended when the amendment was not in effect at time crime was committed and was not applied to his case); *State v. Brown*, 502 S.W.2d 295, 305 (Mo.1973) (appellant who chose not to invoke insanity defense could not then challenge the constitutionality of statute that was not applied to him). In each of these cases, the appellant challenged a statute that had not been applied to his or her case. Unlike these cases, Unverferth affirmatively challenges the constitutionality of an ordinance that was specifically applied to her detriment.

The trial court also cites *Mills v. City of Springfield* as support for its ruling that Unverferth lacked standing to pursue her constitutional claims. *See Mills v. City of Springfield*, No. 2:10–CV–04036–NKL, 2010 WL 3526208, at *5–6 (W.D.Mo. Sept. 3, 2010). *Mills*, an unpublished federal district court case, involved a challenge to a red light camera ordinance in Springfield, Missouri, by plaintiffs who had received a red light camera ticket and paid the associated fine. *Id.* at *1. The plaintiffs in *Mills* alleged, *inter alia*, that the administrative procedure established by the ordinance, which provided review by a hearing examiner and not a division of a circuit court, violated their procedural due process rights. *Id.* at *5. Notably, the plaintiffs in *Mills* did not allege that they were unaware of how to contest their citations. In fact, the Springfield ordinance provided that the violation notice shall give the recipient 30 days to contest the citation. *Id.* at *1. The United States District Court for the Western District of Missouri found that the plaintiffs, who had paid their fines and had not proceeded with the administrative hearing provided by

Springfield's ordinance, lacked standing to subsequently challenge that administrative process because they were not harmed by it. *Id.* at *5–6.[3] In the case at hand, the trial court found that, like the plaintiffs in *Mills*, Unverferth never availed herself of the procedure established by the Ordinance to contest the alleged violation and that by paying the fine she lacked standing to challenge the constitutionality of the Ordinance.

We acknowledge that Unverferth does not plead that she has participated in the municipal court process. In fact her petition avers that she paid the fine set forth on the Notice of Violation. However, it is important to note that Unverferth's due process argument under Counts I and IV is not limited to an attack on the procedures by which she could challenge the Notice of Violation. Unlike the facts in *Mills*, Unverferth's due process challenge encompasses Florissant's failure to provide Unverferth with notice of a court date on the Notice of Violation or adequate notice of how to contest the alleged violation. The petition alleges that the Notice of Violation provided no notice of a court date. Without such notice, we reject the trial court's finding that Unverferth lacked standing to challenge the constitutionality of the Ordinance because she did not avail herself of the procedure established by the Ordinance.

The trial court's reliance upon *Mills* for its finding that Unverferth lacked standing to pursue her constitutional claims is misguided. Not only does *Mills* provide no precedent for this Court, but the trial court fails to address Unverferth's due process allegations relating to the notice

**3.** We note that *Mills*, as most of the red-light opinions either cited by the parties in their briefs or reviewed by us in this appeal, is not binding precedent on this Court. However, we also acknowledge the lack of binding prec-

edent within Missouri on many of the issues presented, and consider the discourse and reasoning of such decisions potentially instructive.

deficiencies of the Notice of Violation and Florissant's enforcement of the Ordinance. Similar to our holding in *Smith v. City of St. Louis,* 409 S.W.3d 404, 412–13 (Mo. App.E.D.2013) with regard to waiver, we reverse the trial court's finding as to standing. We reject the notion that Unverferth lacks standing to challenge the Ordinance when Florissant did not provide her with the requisite notice that would have informed her of the procedures through which she could maintain such challenge.

B. *The trial court erred in finding Unverferth waived her constitutional claims.*

Appellants next challenge the trial court's finding that Unverferth waived her constitutional due process claims because she did not assert such claims at the municipal court proceeding to which she was entitled.

 It is well established in Missouri that a party may not delay raising constitutional challenges in a court of law. A constitutional question must be presented at the earliest possible moment "that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived." *Callier v. Dir. of Revenue, State of Mo.,* 780 S.W.2d 639, 641 (Mo. banc 1989). "The critical question in determining whether waiver occurs is whether the party affected had a reasonable opportunity to raise the unconstitutional act or statute by timely asserting the claim before a court of law." *State ex rel. York v. Daugherty,* 969 S.W.2d 223, 225 (Mo. banc 1998). The pleadings before us do not support the trial court's finding of waiver.

 Applying the directive of *York,* we consider whether Unverferth had a reasonable opportunity to raise her constitutional claims before the Florissant municipal court. We find that she did not. The petition in this action, which includes the Notice of Violation issued by Florissant for a violation of public safety, alleges that the Notice does not contain a court date wherein Unverferth could contest or otherwise challenge the alleged violation. Because Unverferth has pleaded that the Notice of Violation failed to provide her with a court date, we reject the suggestion that her payment of the fine as directed by the Notice of Violation somehow constituted a conscious decision by Unverferth not to assert any defenses to the alleged violation. The Notice of Violation that was attached to the petition gives an alleged violator no guidance or information as to how to challenge the alleged violation. The Notice of Violation sets forth the date, time, and location of the alleged ordinance violation, and instructs the recipient of the Notice as to the amount of the fine, payment due date, and where to send the check. As discussed in greater detail *infra,* by not providing a court date, the Notice of Violation issued by Florissant is not in substantial compliance with the Uniform Citation set forth in Missouri Supreme Court Form 37.A and deprived Unverferth of a reasonable opportunity to raise the constitutionality of the Ordinance in municipal court as contemplated in *York. York,* 969 S.W.2d at 225; *see also Zilba v. City of Port Clinton, Ohio,* 924 F.Supp.2d 867, 874–76 (N.D.Ohio 2013) (plaintiff was found to have standing to challenge ordinance despite paying fine when ticket failed to notify plaintiff that he could contest the citation and also provided for additional criminal penalties if he failed to pay).

The trial court erred in holding that Unverferth waived her right to challenge the constitutionality of the Ordinance.

C. *Appellants have pleaded facts sufficient to defeat Respondents' motions to dismiss on the ground of estoppel.*

Appellants also argue that the trial court erred in finding Unverferth was estopped from raising her constitutional due process claims. The trial court based its estoppel ruling in part on *York*, 969 S.W.2d at 225, and focused on the Supreme Court's discussion that a party to a judgment may voluntarily perform it by paying the amount adjudged against him and, when paid, no subsequent inquiry will be made as to the validity of the judgment. The trial court further found that by failing to appeal an otherwise invalid judgment, a plaintiff waives the right to challenge the decision itself and the constitutionality of the procedures under which the decision was rendered. The trial court lastly found that a party may not collaterally attack a judgment under Rule 37.64(d). Accordingly, the trial court held that because Unverferth paid the $100 fine without challenging the validity of the Notice of Violation, she was estopped from collaterally raising any constitutional claims.

■ In their motions to dismiss and suggestions in support, as well as in their brief on appeal, Respondents claimed that Unverferth was estopped from raising her constitutional claims in this lawsuit because she accepted her conviction upon payment of the fine. Respondents also cite *York* to argue that estoppel prevents collateral attacks on judgments that have already been voluntarily paid in full. *See York*, 969 S.W.2d at 225. While Respondents do not indicate what form of estoppel should preclude Unverferth from asserting her claims, the trial court's discussion most rationally implicates the principles of claim preclusion.[4]

In *York*, the court held that estoppel precluded the parties from challenging a judgment of dissolution of marriage on the ground that it was signed by a family court commissioner, pursuant to a statutory grant of authority that was later determined to be unconstitutional. *Id.* at 224–25. The court noted that a party assuming the benefits or burdens of a judgment is estopped from later attacking that judgment. Quoting *Tremayne v. City of St. Louis*, 320 Mo. 120, 6 S.W.2d 935 (1928), the *York* court stated:

> It has often been said that a void judgment is no judgment; that it may be attacked directly or collaterally.... It neither binds nor bars anyone.... [Y]et, notwithstanding, a party to such judgment may voluntarily perform it, by paying the amount adjudged against him and, when paid, no inquiry will be made as to the validity of the judgment; or he may perform the acts required by a void decree, or accept its benefits, and thereby estop himself from questioning the decree. In other words, a party to a void judgment or decree may be estopped from attacking it, either directly or indirectly.

*Id.* at 225 (*quoting Tremayne*, 6 S.W.2d at 946).

In reviewing *Tremayne*, we note that the Missouri Supreme Court discussed estoppel under the framework of *res judicata*. There, the City of St. Louis had appealed from a judgment against it for damages allegedly caused to the plaintiffs' property, arguing that the trial court improperly struck its defense of *res judicata*.

---

4. Claim preclusion is most applicable in this case because the doctrine bars relitigation of all claims or causes of action that were or might have been litigated in the previous action. *Hollida v. Hollida*, 190 S.W.3d 550, 555 (Mo.App.S.D.2006). Issue preclusion, however, only bars relitigation of those issues that were actually and necessarily decided in the former litigation. *Id.* at 554. Here, Respondents argue that Unverferth is barred from bringing any claims that she should have raised before the municipal court, which implicates claim preclusion.

*Tremayne,* 6 S.W.2d at 936. The City of St. Louis argued that the matter before the trial court was *res judicata* because a previous condemnation suit had been brought by the City, final judgment was entered in that suit, plaintiffs did not appeal from the judgment, and plaintiffs paid the City the amount assessed under the judgment. *Id.* The City of St. Louis claimed that the final judgment in the condemnation suit was therefore not subject to collateral attack. *Id.* at 937. The court found that if the facts alleged in the City's claim of *res judicata* were true, then the City had an absolute defense to the action at hand. *Id.* at 946.

*Res judicata,* more commonly referred to as claim preclusion, precludes the relitigation of the same cause of action that has been previously adjudicated by a final judgment on the merits, or from later raising a claim arising from the same set of facts that should have been raised in the first suit. *Kinsky v. 154 Land Co., LLC,* 371 S.W.3d 108, 112 (Mo.App.E.D.2012); *see also Chesterfield Vill., Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. banc 2002) (village was precluded from bringing a second action for damages after receiving declaratory and injunctive relief in first action). To determine whether the same claim is asserted in both actions, a court looks at the factual bases for the claims, not the legal theories. *Chesterfield Vill.,* at 319–20. Separate legal theories are not separate claims, even if the independent legal theories depend on different facts or call for different kinds of relief. (*King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1991)).

Claim preclusion applies not only to those issues on which the court in the former case was required to pronounce judgment, "but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *Id.* "In other words, if *res judicata* applies, the doctrine precludes a litigant from bringing claims that should have been brought in the first suit." *Lauber–Clayton, LLC v. Novus Properties Co.,* No. ED98302, 2013 WL 682735, at *4 (Mo. App.E.D. Feb. 26, 2013) (citation omitted). "[A] party may not litigate an issue and then, upon an adverse verdict, revive the claim on cumulative grounds which could have been brought before the court in the first proceeding." *King Gen. Contractors, Inc.,* 821 S.W.2d at 501.

Following the principles of claim preclusion or *res judicata,* we agree with the general statement that Unverferth would be estopped from relitigating claims that she had raised in the Florissant municipal court hearing, or claims that she could have raised in the municipal court hearing. However, the facts as pleaded in the petition, which we accept as true, aver that there was no municipal court hearing, which leads us back to the issue raised in *York* and *Tremayne,* i.e., whether Unverferth voluntarily performed the judgment by paying the amount levied against her, thereby precluding her from now attacking the validity of that judgment. Only by voluntarily performing the judgment can Unverferth be said to have assumed the benefits or burdens of the judgment that would estop her from later attacking that judgment. *See York,* 969 S.W.2d at 225.

The pleadings before us sufficiently aver facts that preclude the dismissal of Unverferth's petition due to estoppel. Unverferth has alleged that the Notice of Violation sent to her did not contain a court date. She has further alleged in her petition that it was left to her to determine how, when, and where to challenge the ticket. In *Smith,* we held that the failure

of the City of St. Louis to notify a recipient of a Notice of Violation of his or her ability to contest the ticket, in conjunction with issuing a warning that failure to pay the fine could lead to further legal action, provided the recipient without a meaningful choice between paying the fine and contesting the ticket. *See Smith,* 409 S.W.3d at 413–14. In that case, the record contained sufficient evidence to support our finding that the lack of such information affected Smith's decision to plead guilty because it left her with the false impression that her only option was to pay the fine. *See id.* As a result, we held in *Smith* that the recipient of the Notice of Violation did not waive her right to challenge the City's red light ordinance when she paid the fine. *Id.*

We note that *Smith* was decided on summary judgment, whereas here our analysis on a motion to dismiss is limited to a review of the pleadings. Unverferth has pleaded that the Notice of Violation lacked a court date and provided her with no information on how to challenge the ticket. Although the Notice of Violation was filed with the class action petition, only the front side of the Notice of Violation was attached to the petition. The information contained on the front side of Florissant's Notice of Violation is consistent with Unverferth's averments that she lacked the necessary information that would allow her to make an informed and voluntary decision to pay the $100 fine. We find that Unverferth has pleaded facts sufficient to defeat the defense of estoppel on a motion to dismiss. Whether estoppel precludes Unverferth from litigating her claims is a question of fact not properly decided on a motion to dismiss. *See Mays–Maune & Associates, Inc. v. Werner Bros., Inc.,* 139 S.W.3d 201, 204 (Mo. App.E.D.2004) (if facts and reasonable inferences therefrom establish any ground for relief, petition should not be dismissed). Accordingly, we reverse the trial court's judgment granting the motion to dismiss on the ground of estoppel, and remand this matter to the trial court for further proceedings consistent with this opinion, which includes allowing the parties the opportunity to develop evidence relating to the issue of estoppel.

**D.** *The trial court did not err in dismissing the Cusumanos' claims for declaratory and injunctive relief because they have an adequate remedy at law.*

Appellants argue that the trial court erred in dismissing the Cusumanos' claims for declaratory and injunctive relief because no adequate remedy at law exists under which the Cusumanos could bring their claims. We disagree.

■ A declaratory judgment "should be used with caution and, except in exceptional circumstances plainly appearing, it is not to be used and applied where an adequate remedy already exists." *State ex rel. Freeway Media, L.L.C. v. City of Kansas City,* 14 S.W.3d 169, 173 (Mo.App.W.D. 2000). The declaratory judgment procedure cannot be used where a different specific statutory method of review is provided. *Id.* (petition for declaratory judgment was improper when ordinance provided procedure for other remedies at law); *see also State ex rel. Director of Revenue v. Pennoyer,* 872 S.W.2d 516, 518–19 (Mo.App.E.D.1994) (circuit court lacked authority to entertain declaratory judgment action challenging constitutionality of law authorizing suspension or revocation of driving privileges pending trial *de novo* of drivers arrested for DWI because there were specific and adequate statutory procedures for challenging administrative ruling under statute).

■ Here, the Cusumanos have a legal remedy for challenging their municipal ordinance violation. If the recipient of a

Notice of Violation fails to pay the fine by the due date, the Florissant Police Department issues a summons for the defendant to appear in municipal court. The Notice to Appear attached to the petition notified the Cusumanos of the time and date to appear at Florissant Municipal Court to address the charges should they decide not to pay the $100 fine. The Cusumanos then have the right to a trial *de novo* before a circuit judge should they not prevail at their municipal court hearing. Section 479.200.[5] Because the Cusumanos have an adequate remedy at law, the trial court did not err in dismissing their cause of action for declaratory judgment.

Similarly, an injunction is an equitable remedy, and equitable relief is warranted only where the legal remedies available to a plaintiff are inadequate or incomplete. *See Home Shopping Club, Inc. v. Roberts Broad. Co.,* 989 S.W.2d 174, 180 (Mo.App.E.D.1998). "[T]he mere invalidity of a municipal ordinance is not alone sufficient ground for enjoining its enforcement." *Bhd. of Stationary Engineers v. City of St. Louis,* 212 S.W.2d 454, 458 (Mo.App.St.L.1948). Rather, a person asserting that a municipal ordinance is invalid has an adequate remedy at law by raising the invalidity as a defense to the proceeding against him in municipal court. *Id.*

To warrant the intervention of a court of equity, the plaintiff must show that the enforcement of the ordinance would deprive him or her of property rights without adequate redress by legal remedy, or that injunctive relief is required to prevent a multiplicity of actions for violation of the ordinance. *Id.* "When it is proven that attempted enforcement of an ordinance will result in so many prosecutions that the remedy at law is inade-

quate, then a basis for injunctive relief is shown." *Jackson v. City of Kansas City,* 601 S.W.2d 681, 682 (Mo.App.W.D.1980) (plaintiff failed to show irreparable injury when he had been arrested only one time and the facts in the case merely showed that the city intended to enforce the ordinance).

For example, in *Brotherhood of Stationary Engineers v. City of St. Louis,* the plaintiffs sought to enjoin the defendant from enforcing an ordinance requiring engineers to hold a license from the City of St. Louis, which they contended conflicted with state law. *Bhd. of Stationary Engineers,* 212 S.W.2d at 455. Plaintiffs alleged in their petition that they had been threatened with arrest each and every day they were found to be working in violation of the ordinance. *Id.* at 457. In requesting equitable relief, plaintiffs alleged that they had no adequate remedy at law and without equitable relief, they would be arrested daily and required to defend against a multiplicity of charges. *Id.* The court found that the plaintiffs were entitled to be protected from the expense and annoyance of such a multiplicity of proceedings and equity could intervene to determine, in one case, whether the ordinance was invalid for the reasons claimed. *Id.* at 458.

Here, the Cusumanos invoke the "multiplicity of actions" exception by asserting that each prospective plaintiff in the class action claim will be required to challenge the Ordinance in municipal court "each and every time they are cited." The Cusumanos argue that this circumstance would subject them to a multiplicity of proceedings, thereby allowing them equitable relief.

Appellants' argument lacks merit and conflates the concern over a multiplicity of actions against one plaintiff with a multi-

---

5. All statutory references are to RSMo. Cum. Supp. (2011).

plicity of actions against a large number of plaintiffs. The Cusumanos have received only one citation and will be subject to additional citations only if they again arguably violate the Ordinance by running a red light. As such, the Cusumanos have failed to show that enforcement of the Ordinance will result in a multiplicity of prosecutions rendering the remedy at law inadequate. The Cusumanos, as well as each potential plaintiff in the purported class they represent, are entitled to a hearing in municipal court. This hearing allows them an adequate legal remedy. Therefore, the trial court did not err in dismissing the Cusumanos' claims for injunctive relief.

We grant Point IV with regard to Unverferth, and remand on the issue of estoppel only. We deny Point IV as it relates to the Cusumanos.

## II. Florissant's Authority to Enact the Ordinance

In her second point on appeal, Unverferth argues that the trial court erred in finding the Ordinance was validly enacted by Florissant.[6] Pursuant to that finding, the trial court dismissed parts of Count I of the petition. In its Order and Judgment, the trial court found that Florissant's authority to enact the Ordinance flowed from two distinct sources. First, the trial court found Florissant possessed constitutional authority to enact the Ordinance because of its constitutional home rule powers. The trial court also ruled that Florissant had statutory authority to enact the Ordinance under its police power as granted by Section 304.120. On appeal, Unverferth claims that the Ordinance was not enacted pursuant to Florissant's statutory authority or its police power. Unverferth further contends that an ordinance purportedly enacted under a city's police power, but actually enacted to generate revenue, is void. Appellants do not appeal the trial court's finding that Florissant possessed constitutional home rule authority to enact the Ordinance. As a result, Appellants have waived any appeal on the issue of Florissant's constitutional authority to enact the Ordinance. See Rule 84.04(d). Nevertheless, because we recently addressed this issue in *Smith*, we will, for purposes of clarity, again address the issue of a municipality's constitutional authority to enact a red light camera ordinance.

A. *As a constitutional charter city, Florissant possessed authority to enact the Ordinance.*

As a city that has adopted a home rule charter, Florissant derives its power to act from Article VI, Section 19(a) of the Missouri Constitution. Article VI, Section 19(a) provides that charter cities "shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute." Mo. Const. art. VI, Section 19(a). In addition to their home rule powers, charter cities have all powers conferred by law. *Id.*

"Under Missouri's new model of home rule, even in the absence of an express delegation by the people of a home rule municipality in their charter, the municipality possesses all powers which are not limited or denied by the constitution, by statute, or by the charter itself." *State ex inf. Hannah ex rel. Christ v. City of St. Charles*, 676 S.W.2d 508, 512 (Mo. banc 1984). Given Florissant's status as a char-

---

6. Because the trial court appropriately dismissed the Cusumanos' claims, we address the remainder of the appeal solely with regard to Unverferth.

ter city, the question properly before us for review is not whether Florissant possessed constitutional authority to enact an ordinance, but whether Florissant has properly exercised that authority by enacting an ordinance that does not conflict with the Missouri Constitution, state statutes, or the city's charter. *See Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208, 211 (Mo. banc 1986); *City of Kansas City v. Carlson,* 292 S.W.3d 368, 371 (Mo.App.W.D.2009); *see also* Section 71.010 (municipalities shall confine and restrict the passage of its ordinances to and in conformity with state law upon the same subject).

■ As a constitutional charter city, Florissant has all the power that the legislature could grant unless limited by the constitution, statutes, or its charter, which means it had authority to enact the Ordinance. *See Carlson,* 292 S.W.3d at 371. Whether Florissant's exercise of its authority when it enacted the Ordinance was otherwise limited by Missouri law is discussed in Section III below.

B. *Section 304.120 grants Florissant the authority to enact the Ordinance under its police power.*

■ A city's police power is "the power inherent in a government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society." *Engelage v. City of Warrenton,* 378 S.W.3d 410, 414 (Mo.App.E.D.2012). "The function of police power is to preserve the health, welfare and safety of the people by regulating all threats harmful to the public interest." *Id.* (*quoting State v. Richard,* 298 S.W.3d 529, 532 (Mo. banc 2009)). A city has no inherent police power but rather enjoys only that police power conferred to it by a specific delegation from the state. *Id.* "With regard to traffic control, the State of Missouri has granted municipalities the

authority to exercise its police power in making 'additional rules of the road or traffic regulations to meet their needs and traffic conditions' as long as the ordinance's provisions are consistent with and do not conflict with state law." *Smith,* 409 S.W.3d at 425 (*citing* Section 304.120; *City of Creve Coeur v. Nottebrok,* 356 S.W.3d 252, 261 (Mo.App.E.D.2011)).

■ Here, Unverferth has pleaded that Florissant exceeded its authority under Section 304.120 when it enacted the Ordinance because the Ordinance is not an *additional* rule of the road or traffic regulation enacted to regulate new, supplemental, or separate conduct. Unverferth pleaded that the Ordinance merely attempts to enforce existing rules and regulations when a steady red signal appears at an intersection. While we understand Unverferth's argument, we have not found any precedent holding that a municipality may regulate only conduct not already regulated by another provision of law in order to be deemed an additional rule of the road or traffic regulation. We are not persuaded that the Ordinance does not qualify as an additional traffic regulation under Section 304.120 merely because it addresses conduct already regulated under another provision of law. The Ordinance is an additional regulation enacted to exercise control over traffic on Florissant's streets, and therefore may qualify as a valid exercise of Florissant's police power. *See Smith,* 409 S.W.3d at 424–25.

■ Unverferth further posits that the Ordinance is not a valid exercise of Florissant's police power because the Ordinance bears no substantial and rational relationship to public safety. Unverferth alleges that the Ordinance circumvents Missouri's point system, the purpose of which is to increase public safety on highways. We agree that an ordinance enact-

ed under a city's police power must conform to Missouri law on the same subject. Section 71.010. In both *Smith* and *Nottebrok*, this Court has held that reducing the dangerousness of intersections by targeting vehicles that violate existing traffic regulations is rationally and substantially related to the health, safety, peace, comfort, and general welfare of the public, and is a valid exercise of a city's police power. *See Smith*, 409 S.W.3d at 425–26 (holding the City of St. Louis's red light camera ordinance to be a valid exercise of the city's police power); *Nottebrok*, 356 S.W.3d at 259 (finding that Creve Coeur's automated photo traffic enforcement program was enacted pursuant to the city's police power for regulating public safety). The plain language of the Ordinance targets vehicles that violate existing traffic regulations, i.e., vehicles that run red lights. The stated language of the Ordinance, on its face, appears rationally related to public safety. Furthermore, an ordinance enacted pursuant to a municipality's police power is presumed valid, and the party challenging the ordinance bears the burden of proving its invalidity. *Bezayiff v. City of St. Louis*, 963 S.W.2d 225, 229 (Mo.App.E.D.1997). "The burden is on the party contesting the ordinance to negate every conceivable basis which might support it." *Id.* A plain reading of the Ordinance is consistent with the valid exercise of Florissant's police power. Accordingly, the trial court did not err in finding, on a motion to dismiss, that Florissant possessed legitimate authority to enact the Ordinance under its police power.

C. *Unverferth is entitled to conduct discovery on the issue of revenue generation.*

Despite our holding that the pleadings support a finding that Florissant possessed authority under its police power to enact the Ordinance, Unverferth alleges in the petition that Florissant, in fact, was not exercising its police power authority when enacting the Ordinance, but enacted the Ordinance as an unlawful revenue-generating scheme advanced under the guise of Florissant's police power. Unverferth argues that she is entitled to conduct discovery on the pertinent facts relating to this issue in order for this Court to determine whether a factual basis exists to support her allegations that the Ordinance was enacted for the unlawful purpose of generating revenue. While we acknowledge that Florissant possesses the inherent authority to enact traffic-related ordinances under its police power, the issue of whether Florissant enacted the Ordinance as a proper exercise of police power as opposed to an unlawful revenue-generating tax measure that falls outside of its police power authority is a fact question that is inappropriate for resolution on a motion to dismiss.

Unverferth cites *Automobile Club of Mo. v. City of St. Louis* to support her contention that the Ordinance was created for the purpose of generating revenue, and is thus invalid. In *Automobile Club*, the Missouri Supreme Court noted that an ordinance enacted under the police power of a municipality to regulate its traffic may not be a tax ordinance "in the guise of an ordinance enacted under the police power." *Automobile Club of Mo. v. City of St. Louis*, 334 S.W.2d 355, 363 (Mo.1960). "It is for the court to determine, on all the pertinent facts, whether the primary and fundamental purpose of the ordinance is regulation under the police power or revenue under the tax power." *Id.* While the amount of revenue and its purpose are factors the court should use to determine whether the ordinance is primarily a revenue generating measure, it may also consider "other relevant facts

that bear on the question of the basic nature of the ordinance." *Id.*

■■■ Unverferth has alleged that Florissant enacted the Ordinance for the overriding purpose of generating revenue, and not to promote traffic safety. As noted above, Unverferth must overcome the strong presumption of validity that attaches to the Ordinance. See *Bezayiff*, 963 S.W.2d at 229. While this burden may prove challenging, and perhaps insurmountable, Unverferth is entitled to the opportunity to support her allegations with facts developed through discovery and presented to the trial court. The trial court erred in denying Unverferth this opportunity by granting Florissant's motion to dismiss. Unverferth is entitled to conduct discovery and to establish a factual basis for her allegation that the primary and fundamental purpose of the Ordinance is revenue generation.

Therefore, we reverse the trial court's judgment granting the motion to dismiss on the issue of Florissant's exercise of police power and its corresponding dismissal of Count I, and remand this matter to the trial court for proceedings consistent with this opinion, which includes allowing the parties the opportunity to develop, through discovery, evidence relating to the revenue-generation allegations set forth in the petition.

### III. Conflict with State Law

Despite our holding that Florissant possessed constitutional and statutory authority to enact the Ordinance, we must consider whether Florissant exceeded that authority by enacting an ordinance that stands in conflict with Missouri law. *See Cape Motor Lodge, Inc.*, 706 S.W.2d at 211; Section 71.010 (municipalities shall confine and restrict the passage of its ordinances to and in conformity with state law upon the same subject).

In her petition, Unverferth sought declaratory judgment regarding whether the Ordinance is void as a matter of law because it conflicts with Missouri state law, specifically, Section 304.281.1, which regulates red light violations. Unverferth also sought declaratory judgment that the Ordinance conflicts with Missouri state laws regarding the assessment of points, specifically, Sections 302.225, 302.302, and 302.010(12). In dismissing Unverferth's claims for declaratory judgment, the trial court noted that this Court in *Nottebrok* upheld a "substantially similar ordinance under an identical challenge." The trial court further found that because the Ordinance does not permit what Missouri statutes prohibit nor prohibit what is permitted by statute, the Ordinance does not conflict with state law, and dismissed Unverferth's claims related thereto under Count I.

*A. Unverferth has alleged sufficient facts that the Ordinance conflicts with Missouri law regarding the assessment of points for moving violations.*

Unverferth submits that the trial court erred in dismissing Count I of the petition by finding the Ordinance to be consistent with state law relating to the assessment of points for moving violations. We agree.

Section 302.010(12) defines a moving violation as a violation in which the vehicle is in motion at the time of the violation. Section 302.225.1 imposes a mandatory requirement that courts report moving violation offenses to the Department of Revenue within seven days of any plea or finding of guilty. Section 302.302.1(1) requires the assessment of two points to the driver's license of any person who commits a moving violation. Unverferth pleaded in the petition that the Ordinance conflicts with the aforementioned statutes because violations of the Ordinance consti-

tute moving violations under state statute, yet Florissant has classified violations of the Ordinance as non-moving infractions for which no points may be assessed.

A municipal ordinance is void if it conflicts with the general laws of the state. *McCollum v. Dir. of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995). "The test for determining if a conflict exists is whether the ordinance 'permits what the statute prohibits' or 'prohibits what the statute permits.'" *Cape Motor Lodge, Inc.*, 706 S.W.2d at 211 (*quoting Page Western, Inc. v. Community Fire Protection Dist.*, 636 S.W.2d 65, 67 (Mo. banc 1982)). When the expressed or implied provisions of the ordinance and state law are inconsistent and in irreconcilable conflict, the statute annuls the ordinance. *Miller*, 834 S.W.2d at 907.

Because the language of the Ordinance and statutes at issue are not disputed, this point on appeal raises an issue of statutory interpretation, which we will resolve as a matter of law. *Finnegan v. Old Republic Title Co. of St. Louis, Inc.*, 246 S.W.3d 928, 930 (Mo. banc 2008) (statutory interpretation is an issue of law that this court reviews *de novo* ). Section 302.010(12) defines a moving traffic violation as "that character of traffic violation where at the time of violation the motor vehicle involved is in motion." Section 302.010(12). This definition is critical to our interpretation of Section 302.302, which establishes Missouri's point system for the suspension and revocation of licenses. Section 302.302 instructs the Director of Revenue to put a point system into effect and specifically enumerates the points assessed for specific violations. Section 302.302.1(1) states that, "[a]ny moving violation of a . . . municipal . . . ordinance or regulation not listed in this section" shall be assessed two points. Section 302.302.1(1).

The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. *Oak Creek Whitetail Ranch, L.L.C. v. Lange*, 326 S.W.3d 549, 550 (Mo. App.E.D.2010). The term "shall" is used in laws, regulations, or directives to express what is mandatory. *Allen v. Pub. Water Supply Dist. No. 5 of Jefferson Cnty.*, 7 S.W.3d 537, 540 (Mo.App.E.D. 1999). Here, the plain language of Missouri state law requires any municipal ordinance violation occurring while the vehicle is in motion be assessed two points by the director of revenue. Furthermore, municipal courts are required to report to the director of revenue all moving violations of municipal ordinances within seven days of any plea or finding of guilt. Section 302.225.1. Florissant's enforcement of the Ordinance through its Notice of Violation and Notice to Appear is in stark and direct conflict with Missouri law. The trial court's reliance upon our decision in *Nottebrok* as support for the judgment is unavailing.

In *Nottebrok*, this Court held that the red light camera ordinance enacted in Creve Coeur did not conflict with Missouri law governing the assessment of points for moving violations. The language of the ordinance at issue in *Nottebrok* facially did not prohibit running a red light, but prohibited the *presence* of a vehicle in an intersection during a steady red signal. *Nottebrok*, 356 S.W.3d at 262. This court further noted that the Creve Coeur ordinance imposed strict liability on vehicle owners for a violation of its ordinance, not drivers. *Id.* We held in *Nottebrok* that the ordinance was drafted with language that did not prohibit a moving violation committed by a *driver*, but was intended to hold vehicle *owners* liable for vehicles found to be present in an intersection during a steady red signal. *Nottebrok*, 356 S.W.3d at 259.

Unlike the Creve Coeur ordinance, the plain language of the Ordinance creating the "violation of public safety" makes no attempt to characterize the conduct regulated as a non-moving violation. Under the plain language of the Ordinance, a person commits the offense of violation of public safety when "such person fails to comply with *the rules and regulations when a steady red signal appears at an intersection* and the violation is detected through the automated red light enforcement system." (emphasis added). Because the Ordinance does not define the "rules and regulations" it seeks to enforce, by default the Ordinance enforces existing Missouri laws and municipal ordinances that apply when a steady red signal appears at an intersection. Under Section 304.281.1(3), this conduct includes stopping at a red light until the light changes colors and stopping at red light before making a right-hand turn. Regardless of the nomenclature asserted by Florissant for the offense of a "violation of public safety," the conduct regulated by the Ordinance is, quite simply and unambiguously, running a red light. Our interpretation of the Ordinance is consistent with the language used by the Florissant in the Notice of Violation issued to alleged violators. The Notice of Violation informs the recipient that probable cause exists to believe that the recipient has committed the offense of "Violation of Public Safety (Failure to Stop at a Red Light)."

Common sense and collective experience suggest that a person cannot fail to stop at a red light without being in motion. The conflict between these two concepts underscores the error of the trial court's judgment. Although the Notice of Violation informs the recipient that a violation of the Ordinance is a non-moving infraction and no points will be assessed against the accused's license, the conduct regulated by the Ordinance and described in the Notice of Violation is the failure to stop at a red light, i.e., a moving violation. The Ordinance as enforced by Florissant permits moving violations to be classified as non-moving violations in direct conflict with state law. In other words, the Ordinance as applied permits Florissant to ticket and fine violators for a moving violation without requiring the municipal court to report the moving violation to the director of revenue for the assessment of points. By doing so, Florissant permits what the state law prohibits—the classification of running a red light as a non-moving violation free from the assessment of points.

We disagree with the trial court's finding that the Ordinance at hand is "substantially similar" to the Creve Coeur ordinance and supports a holding that Florissant's Ordinance is consistent with state law and therefore valid. Under Missouri state law, two points must be assessed to the driver's license of any person who violates the Ordinance. *See* Section 302.302. The petition alleges that the Ordinance conflicts with Sections 302.225, 302.302, and 302.010(12), and our reading of the Ordinance and the state statutes confirm such conflict. We hold that the trial court erred in declaring that the Ordinance does not conflict with the state statutes relating to the assessment of points for moving violations and reverse the trial court's judgment granting the Respondents' motions to dismiss with regard to Count I.

**B.** *The Ordinance does not conflict with Section 304.281.*

■ Unverferth also contends that the trial court erred in dismissing Count I of the petition because the Ordinance conflicts with or is contrary to Section 304.281, the state statute regulating red light violations. Specifically, Unverferth alleges in the petition that Section 304.281

only applies to drivers and pedestrians, not owners of vehicles, and that an element of the offense sanctioned by Section 304.281 requires identification of the driver. The petition alleges that, in contrast to state law, the Ordinance prosecutes a vehicle *owner* for the same conduct by allowing Florissant to presume the owner was the driver of the vehicle unless the owner offers evidence to the contrary. Unverferth argues this difference creates a conflict between the Ordinance and state law because the Ordinance permits what Section 304.281 prohibits, i.e., prosecution of a vehicle owner for a red light violation. Unverferth also argues that by eliminating the burden of proving the identity of the driver by prosecuting vehicle owners, the Ordinance requires fewer elements than the state statute to prove a violation of running a red light. We disagree.

Unverferth's argument fails because like the state statute, the Ordinance makes it unlawful for drivers, not owners, to run a red light. Although the Ordinance presumes the registered owner of a vehicle running the red light to be the driver of that vehicle at the time of the violation, the focus of the Ordinance remains on the driver. If the owner was not driving the vehicle at the time of the violation, the Ordinance allows the owner to produce evidence to that effect either by affidavit or under oath at a municipal court proceeding. The Florissant prosecuting attorney may then terminate the prosecution of the owner and issue a citation to the person identified as the driver of the vehicle. Unverferth mistakenly characterizes the rebuttable presumption provided in the Ordinance as an expansion of liability for red light violators to the vehicle owner. While we are understanding of Unverferth's argument, and recognize the practical implications of the presumption provided in the Ordinance, the use of a rebuttable presumption clearly is permitted under Missouri case law. While the use of a rebuttable presumption may prove to be a significant aid in prosecuting violations of the Ordinance, we reject Unverferth's argument that the presumption expands the liability for red light violations to the vehicle owners who were not driving when the red light violation occurred.

We acknowledge that the use of the rebuttable presumption in the Ordinance may give the appearance of lessening the government's burden to prove red light violations. As distasteful as such presumption may appear to the layman, the validity of such a presumption has been long established in Missouri. *See City of St. Louis v. Cook*, 359 Mo. 270, 221 S.W.2d 468, 469 (1949) (municipal ordinance creating rebuttable presumption that violation of municipal parking ordinance was committed or authorized by the registered owner of the vehicle was lawful). Unverferth urges this Court to disregard Missouri precedent and adopt the holding of the Minnesota Supreme Court in *State of Minnesota v. Kuhlman*, 729 N.W.2d 577 (Minn.2007). In *Kuhlman*, the Minnesota Supreme Court considered the validity of a municipal red light camera ordinance that provided a similar rebuttable presumption not found in the Minnesota state statute regulating red light traffic. Specifically, the Minnesota Supreme Court noted that in prosecutions for a red light violation under Minnesota state law, the prosecutor had the burden of proving beyond a reasonable doubt the identity of the driver at the time of the offense. *Kuhlman*, 729 N.W.2d at 584. In contrast, the Minnesota red light camera ordinance allowed the prosecutor to presume the owner was the driver unless the owner rebutted that presumption. *Id.* The *Kuhlman* court held that allowing a rebuttable presumption that the owner is the driver "eliminates the presumption of innocence and shifts

the burden of proof from that required by the rules of criminal procedure." *Kuhlman,* 729 N.W.2d at 583. Because the red light camera ordinance provided less procedural protection to a person charged with an ordinance violation than was provided to a person charged under the parallel state statute, the *Kuhlman* court struck down the ordinance at issue.

The factual similarities between *Kuhlman* and the case before us are compelling. And while we question the need for such a presumption in light of advancing technology, we are not at liberty to disregard Missouri precedent on this matter. In *Cook,* the Missouri Supreme Court considered the issue of rebuttable presumptions and concluded that such presumptions do not eliminate the prosecution's burden of proof. *Cook,* 221 S.W.2d at 469. Rather than shifting the *burden of proof,* which remains with the prosecution, the *Cook* court held that a rebuttable presumption merely shifts the *burden of evidence* onto the defendant to produce, if he or she desires, evidence to rebut the prosecution's prima facie case. *Id.* The *Cook* court continued:

> Statutes or ordinances providing a rule of evidence, in effect, that a shown fact may support an inference of the ultimate or main fact to be proved are well within the settled power of the legislative body; and such legislative provisions do not violate provisions of the federal or state constitutions. Legislation providing that proof of one fact shall constitute prima facie evidence of the main fact in issue is but to enact a rule of evidence . . . [s]tatutes, national and state, dealing with such methods of proof in both civil and criminal cases, abound, and the decisions upholding them are numerous.

*Id.* at 469–70 (citations omitted). The *Cook* court qualified its holding by noting that the fact upon which the presumption rests must have some "relation to or natural connection with the fact to be inferred." *Id.* at 470. This connection cannot be wholly unreasonable or unnatural, but rather there must be some "rational connection between the fact proved and the ultimate fact presumed. . . ." *Id.*

■ Despite our concerns as to the continuing validity of the rebuttable presumption used in the Ordinance, we are unwilling to hold that presuming the owner of a vehicle was driving the vehicle at the time of the red light camera violation is wholly unreasonable or arbitrary.[7] As a matter of law, the use of a rebuttable presumption does not change the burden of proof or expand the scope of the Ordinance to vehicle owners who were not driving the vehicle at the time of the violation. Therefore, the facts alleged in the petition, even if true, are insufficient to support Unverferth's claim for declaratory judgment that the Ordinance conflicts with Section 304.281. Because Unverferth has not alleged facts that, if proved, demonstrate a conflict between the Ordinance and Section 304.281, the trial court proper-

---

7. While such a presumption does have a rational connection with the fact inferred, applying this presumption in 2013 is vastly different and significantly less compelling than in 1949 when *Cook* was decided. Multiple vehicle households that are the norm today were likely non-existent in 1949. We acknowledge the concerns raised in Judge Mooney's separate opinion regarding the use of a rebuttable presumption beyond the non-moving parking violation scenario presented in *Cook.* However, the *Cook* court's rationale in characterizing a rebuttable presumption as a permissible rule of evidence is not limited to a particular type of offense or municipal violation, and we have found no judicial authority so limiting the use of a rebuttable presumption in Missouri. Until the Missouri Supreme Court reconsiders its holding in *Cook, Cook* remains precedent. We are constrained to follow its holding and will not stray from its mandate.

ly granted Respondents' motions to dismiss with regard to that issue.

## IV. Due Process

In her third point on appeal, Unverferth claims that the trial court erred in dismissing Counts I and IV of the petition because the Ordinance and Florissant's prosecution thereof violated her procedural due process right to be heard at a meaningful time and in a meaningful manner, the Ordinance unlawfully shifts the criminal standard of proof beyond a reasonable doubt, and the Ordinance is unconstitutionally vague.

A. *Unverferth has alleged sufficient facts in the petition stating a cause of action for a violation of the Missouri Supreme Court Rules.*

Among the allegations that the Ordinance should be declared void because it violates her procedural due process right, Unverferth claims that the Notice of Violation fails to give notice of a court date or any information on how to challenge the violation. Rather, the Notice of Violation is alleged to contain only a due date for payment of the fine. Unverferth contends the lack of notice deprived her of her due process right to be heard at a meaningful time and in a meaningful manner under Article I, Section 10 of the Missouri Constitution.

This Court recently addressed a similar factual scenario in *Smith*. There, we discussed the authority of the Missouri Supreme Court to enact rules relating to practice, procedure, and pleading for all courts. *See Smith*, 409 S.W.3d at 415–16; Mo. Const. Art. V, Section 5. Specifically, we discussed Rule 37.33(b) and its requirement that a Notice of Violation sent in response to a traffic violation governed by a traffic violation bureau must contain language informing the recipient that he or she has the option of either paying the fine or pleading not guilty and appearing at trial. *Smith*, 409 S.W.3d at 416–18. Because the City of St. Louis did not include such language on its Notice of Violation, we found the Ordinance, as applied to the appellant in that matter, to be void. *Id.* at 416–18 (*quoting Bueche v. Kansas City*, 492 S.W.2d 835, 842 (Mo. banc 1973)) ("Though constitutional charter cities may legislate for themselves as long as they do so consistently with state statute, 'that does not mean that suits by such cities in the courts of this state are not subject to rules of practice and procedure promulgated by the Supreme Court under the rule making power conferred on it by Article V, Section 5 of the Constitution of Missouri.'").

Had Unverferth alleged in her petition that Florissant processes its red light camera tickets through a traffic violations bureau, we would follow our holding in *Smith*. However, the record contains no evidence that Florissant processes its red light camera tickets through a traffic violations bureau, and it is well established that this Court cannot take judicial notice of a municipal ordinance that is not in the record on appeal. *Heuer v. City of Cape Girardeau*, 370 S.W.3d 903, 910 n. 3 (Mo. App.E.D.2012). As such, we do not consider the requirements of Rule 37.33(b) that were controlling in *Smith*, and limit our review of Florissant's compliance with Rule 37.33 to the provisions of subsections (a) and (c).

Under Rule 37.33(a), a violation notice must be in writing and shall:

(1) State the name and address of the court;

(2) State the name of the prosecuting county or municipality;

(3) State the name of the accused or, if not known, designate the accused by any name or description by which

the accused can be identified with reasonable certainty;

(4) State the date and place of the ordinance violation as definitely as can be done;

(5) State the facts that support a finding of probable cause to believe the ordinance violation was committed and that the accused committed it;

(6) State that the facts contained therein are true;

(7) Be signed and on a form bearing notice that false statements made therein are punishable by law;

(8) Cite the chapter and section of the ordinance alleged to have been violated and the chapter and section that fixes the penalty or punishment; and

(9) State other legal penalties prescribed by law may be imposed for failure to appear and dispose of the violation.

Rule 37.33(c) further provides that the violation notice "shall be substantially in the form of the Uniform Citation set out in Form 37.A, with such *additions* as may be necessary to adapt the Uniform Citation to the jurisdiction involved." Rule 37.33(c) (emphasis added). Form 37.A provides for a court date and includes an accompanying notice that the recipient's failure to appear in court at the specified time may result in a suspension of his or her driver's license and a warrant being issued for his or her arrest.

■ Unverferth alleged in her petition that Florissant's Notice of Violation does not contain a court date and that the accused would have to determine on his or her own how and when to appear in court to contest the violation. We acknowledge that the language of Rule 37.33(a) does not require a court date to be provided. However, Rule 37.33(c) requires Florissant's Notice of Violation to be in "substantial"

compliance with the Uniform Citation set out in Form 37.A, which includes a court date. The omission of a court date on the Notice of Violation is critical because, as Unverferth contends and we agree, the lack of a court date could erroneously lead the recipient to believe that he or she has no other option but to pay the fine. As we noted in *Smith*, "it is not lost on this Court that the notices mailed by City to vehicle owners produce the exact results desired by [St. Louis] City, i.e., payment of fines by vehicle owners without resort to legal proceedings or challenge." *Smith*, 409 S.W.3d at 418.

The inclusion of a court date on the Notice of Violation is important because it provides the accused with a meaningful choice—prepay the fine and plead guilty or appear in court to contest the violation. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("[The] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."). Therefore, the lack of a court date on Florissant's Notice of Violation, without any additional information as to the process for challenging the alleged violation, renders the Notice of Violation noncompliant with Form 37.A.

Unverferth's allegations that the Notice of Violation does not contain a court date and requires alleged violators to determine on their own how to challenge the ticket, if true, state a cause of action for a violation of the Missouri Supreme Court Rules. As a result, the trial court erred in granting Respondents' motions to dismiss Counts I and IV of the petition. Both parties are entitled to develop and present facts addressing the issue of a Supreme Court Rule violation through discovery.

**B.** *Unverferth has alleged facts stating a cause of action for a violation of procedural due process.*

██ Similar to our analysis of the notice requirement established under the Missouri Supreme Court Rules, both the federal and Missouri constitutions impose the fundamental requirement of due process, which includes providing notice reasonably calculated to apprise the parties of the pendency of the action and afford them an opportunity to present their objections "at a meaningful time and in a meaningful manner." *State ex rel. Nixon v. Peterson,* 253 S.W.3d 77, 82 (Mo. banc 2008) (*quoting Jamison v. Dept. of Soc. Servs., Div. of Family Servs.,* 218 S.W.3d 399, 405 (Mo. banc 2007)); *see also Belton v. Bd. of Police Comm'rs of Kansas City,* 708 S.W.2d 131, 137 (Mo. banc 1986). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

██ Due process does not mean that the same type of process is required in every instance; rather, "[d]ue process is flexible and calls for such procedural requirements as the particular situation demands." [8] *Mathews,* 424 U.S. at 333, 96 S.Ct. 893. "To determine what process is due in a particular case, a court determines whether the plaintiff was deprived of a property or liberty interest and, if so, whether the procedures followed were sufficient to satisfy constitutional due process requirements." *Peterson,* 253 S.W.3d at 82. In doing so, we must balance the competing interests at stake: "[F]irst, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Belton,* 708 S.W.2d at 137 (*quoting Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

██ The petition before us pleads sufficient allegations to support Unverferth's cause of action for a violation of procedural due process. The petition sufficiently alleges a lack of notice and meaningful information to defeat Respondents' motion to dismiss. Again, whether Unverferth will be able to offer sufficient evidence to support her claims of violation of procedural due process is not an issue before this court on a motion to dismiss. We acknowledge that the record before us does not include the reverse side of the Notice of Violation, which may or may not contain information relevant to a due process analysis. Furthermore, the balancing test applied by the courts when analyzing due process issues requires the development of facts and presentation of evidence that has not yet occurred in this litigation. The record is undeveloped as to the administrative burdens that Florissant would face if it were to provide each alleged violator with a court date on the Notice of Violation in relation to the private interests of the alleged violator. Consistent with our analysis of the deficiencies of the Notice of Violation under Rule 37.33, both parties are entitled to develop facts and present

---

8. While civil ordinances need not provide "the heightened procedural protections required by the Fifth, Sixth, and Eighth Amendments of the U.S. Constitution," it is essential that one must still be afforded the opportunity to be heard at a meaningful time and in a meaningful manner. *See Nottebrok,* 356 S.W.3d at 257.

evidence relevant to Unverferth's constitutional due process arguments under Article I, Section 10 of the Missouri Constitution. Accordingly, we reverse the trial court's judgment dismissing Counts I and IV of the petition and remand this matter to the trial court for proceedings consistent with this opinion.

C. *Rebuttable presumptions are valid in Missouri.*

Unverferth argues that Florissant's enforcement of the Ordinance also violates the due process requirements of Article 1, Section 10 of the Missouri Constitution because a municipality must prove beyond a reasonable doubt that the accused violated an ordinance. Unverferth contends that the rebuttable presumption provided in the Ordinance unlawfully shifts the burden of proof onto the accused to overcome a presumption of guilt, in violation of his or her due process rights.

As we discussed *supra*, Missouri law holds that a rebuttable presumption does not shift the burden of proof onto the defendant. Even with the allowance of a rebuttable presumption, the prosecution is still required to prove its prima facie case against the accused. Only after the establishment of a prima facie case does the burden of evidence shift to the accused to produce evidence, if desired, to rebut the prosecution's case. The Missouri Supreme Court has held that providing such a rule of evidence lies within the legitimate power of the municipality and violates neither the federal nor Missouri constitutions. *Cook*, 221 S.W.2d at 469–70. As a result, the trial court did not err in dismissing Counts I and IV as those counts relate to Unverferth's allegations of Florissant's use of a rebuttable presumption.

D. *The Ordinance is not unconstitutionally vague.*

Unverferth's final due process challenge to the Ordinance under Article I, Section 10 of the Missouri Constitution is that the Ordinance is unconstitutionally vague. Unverferth first contends that the Ordinance is vague because it allows for arbitrary or discriminatory application by failing to provide standards for how the prosecutor or municipal court judge should apply the Ordinance. Unverferth next asserts that the Ordinance is vague because its prohibitions are not clearly defined so as to give a person of ordinary intelligence a reasonable opportunity to know what actions are prohibited. Finally, Unverferth claims the Ordinance is vague because it fails to specify the punishment for a violation of the Ordinance.

■ The vagueness doctrine is based upon due process requirements established by the U.S. and Missouri constitutions. *City of Pagedale v. Murphy*, 142 S.W.3d 775, 778 (Mo.App.E.D.2004). "Due process requires that laws provide notice to the ordinary person of what is prohibited and that such laws provide law enforcement officials with standards so as to prevent arbitrary and discriminatory enforcement." *City of Festus v. Werner*, 656 S.W.2d 286, 287 (Mo.App.E.D.1983). "An ordinance is void for vagueness when it uses terms so vague that a person of common intelligence must guess at its meaning and would differ as to its application." *Murphy*, 142 S.W.3d at 778 (internal quotation and citation omitted). An ordinance will not be found to be vague "if it is susceptible to any reasonable construction that will sustain it." *Id.* Absolute certainty is not required in determining whether terms are impermissibly vague; if a permissible application of the law may be made, courts should make that application. *Turner v. Missouri Dep't of Conservation*, 349 S.W.3d 434, 444 (Mo.App.S.D.2011). Additionally, an

ordinance enacted under a city's police power must be "sufficiently definite to provide those charged with its administration with a clear standard which operates uniformly and avoids arbitrary enforcement." *State ex rel. Casey's Gen. Stores, Inc. v. City Council of Salem*, 699 S.W.2d 775, 777 (Mo.App.S.D.1985) (quotation omitted). An ordinance is unconstitutionally vague where it requires the vesting of discretion related to the administration of a police regulation. *City of Clarkson Valley v. Jones*, 872 S.W.2d 531, 533 (Mo. App.E.D.1994).

Unverferth first argues that the Ordinance is unlawfully vague because of the broad discretion given to the prosecutor to determine whether the accused's testimony or sworn affidavit is sufficient to terminate the prosecution. We disagree.

The Ordinance, in relevant part, states: [I]f at the time of the violation, the motor vehicle was being operated by a person other than the owner of the vehicle or the license plate captured by the recorded image was stolen, the owner may submit information to that effect by affidavit, on a form provided by the City, or under oath at the Municipal Court proceeding. If an owner furnishes *satisfactory evidence* pursuant to this provision, the Florissant Prosecuting Attorney *may terminate* the prosecution of the citation issued to the owner and, if appropriate, issue a citation to a person clearly identified in the evidence as the operator of the motor vehicle at the time of this violation. (emphasis added).

Unverferth posits the Ordinance is unclear as to what constitutes "satisfactory evidence" and gives the prosecutor unbridled discretion to subjectively determine when he or she "may terminate" the prosecution. We do not agree that this language renders the Ordinance unconstitutionally vague because it does not allow prosecutors to arbitrarily determine when to enforce the Ordinance. *See Jones*, 872 S.W.2d at 533 (an ordinance is unconstitutionally vague when it provides for discretion in administering a police regulation). Here, the Ordinance merely allows prosecutors discretion to *terminate* the prosecution once a violation has occurred if the accused presents evidence that he or she was not driving the vehicle or that it was stolen at the time of the violation. The Ordinance allows no discretion in determining whether a violation has occurred or when the Ordinance should be enforced, and, therefore, is not unconstitutionally vague.

Unverferth next contends the Ordinance is unconstitutionally vague because the language of the Ordinance does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act accordingly. We are not persuaded. An ordinance is unconstitutionally vague if it fails to provide notice to an ordinary person of what is prohibited. *Werner*, 656 S.W.2d at 287. Here, the Ordinance clearly gives notice to an ordinary person that the driver of a vehicle who fails to adhere to the rules and regulations at a red light is liable for a violation of the Ordinance. While the Ordinance allows Florissant to presume the vehicle owner is the driver of the vehicle, we reject Unverferth's argument that the presence of a rebuttable presumption injects an element of uncertainty that renders the Ordinance unconstitutionally vague. The fact that the vehicle owner may or may not have been the driver at the time of the violation does not alter who is held liable under the Ordinance, i.e., the driver. An owner's uncertainty as to the vehicle's driver at a given time is not synonymous with his or her uncertainty as to the parameters of the activity prohibited by the Ordinance.

Unverferth also argues that the Ordinance's scope is unknown and uncertain because it does not enumerate upon which "rules and regulations" a violation of the Ordinance is premised. The Ordinance states that "[a] person commits the offense of violation of public safety when such person fails to comply with the rules and regulations when a steady red signal appears at an intersection. . . ." Here, the rules and regulations in place when a steady red signal appears at an intersection are limited to those proscribed by Missouri statute and by municipal ordinances. *See* Sections 304.271 and 304.281. A person of reasonable intelligence does not have to guess at what the Ordinance prohibits. *See Murphy*, 142 S.W.3d at 778. Because an ordinance is not vague "if it is susceptible to any reasonable construction that will sustain it," we hold the Ordinance is not void for vagueness. *See id.*

Unverferth directs this Court to the Ordinance's failure to specify a punishment for its violation as her final argument that the Ordinance is unconstitutionally vague. We have found no case law supporting the proposition that the lack of an enumerated punishment renders an ordinance unconstitutionally vague, nor has Unverferth provided any such authority. Furthermore, Unverferth pleaded in her petition and argued on appeal that Florissant's general penalty provision applies to violations of the Ordinance. Unverferth's final argument as to vagueness is equally without merit.

Because the Ordinance is not unconstitutionally vague, the trial court did not err in dismissing that portion of Counts I and IV of the petition relating to Unverferth's vagueness arguments.

## V. Unjust Enrichment

■ In her final point on appeal, Unverferth asserts that the trial court erred in dismissing her claims for unjust enrichment because she properly pleaded the elements supporting that cause of action, and because the trial court erred in finding that her damages claims are barred by the voluntary payment doctrine. Because we find the voluntary payment doctrine bars Unverferth from obtaining any restitution in this matter, we uphold the trial court's dismissal of Counts II and VI.

■ As we noted in *Smith*, Missouri law has consistently recognized the voluntary payment doctrine as a defense to a claim for unjust enrichment. *Smith*, 409 S.W.3d at 419 (*citing Huch v. Charter Commc'n, Inc.*, 290 S.W.3d 721, 726 (Mo. banc 2009)). Under this doctrine, a person who voluntarily pays money with full knowledge of all the facts in the case cannot then recover the payment, even if the payment is made under protest. *Id.* The payor may not recover the payment even if there was no liability to pay in the first instance, and the payor made the payment under the false impression that the demand was legal. *Am. Motorists Ins. Co. v. Shrock*, 447 S.W.2d 809, 811–12 (Mo.App. K.C.1969). However, in limited circumstances where payment is made due to fraud, duress, or a mistake of fact, restitution will be allowed despite voluntary payment. *Huch*, 290 S.W.3d at 726; *Pitman v. City of Columbia*, 309 S.W.3d 395, 404 (Mo.App.W.D.2010). This limited exception does not apply where the payor seeks recovery because payment was made due to a mistake of law. "[W]here money has been voluntarily paid with full knowledge of the facts it cannot be recovered on the ground that the payment was made . . . under a mistake of law." *Pitman*, 309 S.W.3d at 404. "A mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts, but

is ignorant of, or comes to an erroneous conclusion as to, their legal effect." *Id.*

In her petition, Unverferth admitted that she paid the $100 fine, but alleged that she made the payment under "the reasonable, but mistaken, belief that the Ordinance was valid." As this Court noted in *Smith*, a mistake as to the validity and enforceability of an ordinance is an issue of law. *Smith*, 409 S.W.3d at 419–20. Unverferth's admission in the petition that her mistake was one of law precludes our application of the mistake of fact exception to the voluntary payment doctrine.

In furtherance of her claim for restitution, Unverferth asks this Court to disregard the distinction between mistake of law and mistake of fact, and apply the exception to the voluntary payment doctrine if either a mistake of law or fact is pleaded. Unverferth notes that some Missouri courts have questioned the reasonableness of distinguishing between a mistake of law and a mistake of fact, citing *Western Cas. & Sur. Co. v. Kohm*, 638 S.W.2d 798, 800 (Mo.App.E.D.1982) and *Handly v. Lyons*, 475 S.W.2d 451, 462 (Mo.App.K.C.1971). We note that neither of these opinions outright rejects the mistake of fact/mistake of law distinction. *See Handly*, 475 S.W.2d at 462; *Kohm*, 638 S.W.2d at 800 ("This does not mean that the traditional analysis is irrelevant. It is still necessary to consider the nature of the mistake, the circumstances under which it was made, the conduct of the payee, and so on, insofar as these factors indicate whether it would be 'unjust' to permit retention of the benefit."). We find no basis to disregard the parameters placed on the voluntary payment doctrine in *Huch* and applied by this Court in *Smith*.

Lastly, Unverferth argues that restitution of the fine is permissible because she paid her fine under the threat of arrest, imprisonment, and "additional punishments," which constitutes payment under duress. As noted above, recovery of payments made under duress is not barred by the voluntary payment doctrine. *Huch*, 290 S.W.3d at 726. While we recognize the practical implication that receiving a Notice of Violation may have on the ordinary citizen, Missouri courts do not recognize the threat of legitimate legal process as duress because the party threatened is entitled to plead and prove that he is not liable. *Smith*, 409 S.W.3d at 420 (*citing Sch. Dist. of Kansas City, Missouri v. Missouri Bd. of Fund Com'rs*, 384 S.W.3d 238, 275 (Mo.App.W.D.2012)). Conduct only constitutes duress if it is wrongful. *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 371 (Mo.App.W.D.1996). "[I]t is not duress to do, or threaten to do, what one has a right to do." *Id.* Here, as in *Smith*, until instructed otherwise by the courts, Florissant was entitled to pursue legal action against Unverferth if she did not pay the fine or appear in municipal court to contest her violation. *See Cmty. Fed. Sav. & Loan Ass'n v. Dir. of Revenue*, 752 S.W.2d 794, 797 (Mo. banc 1988) ("Governments are entitled to presume that statutes are constitutional.").

The trial court correctly found that the voluntary payment doctrine barred Unverferth's claims for restitution, and did not err in dismissing Counts II and VI.

## Conclusion

As noted in our recent opinion in *Smith*, this Court is well aware of the criticism levied against municipal red light ordinances and the concerns expressed regarding the perceived lack of procedural due process safeguards. Red light camera ordinances are often characterized as a system designed to generate financial windfalls for municipalities, with public safety simply an afterthought. We do not con-

cern ourselves with the political aspect of such ordinances—nor should we—for such concerns are the exclusive and committed task of legislative bodies, not the judiciary. We limit our review to the legal issues brought before us.

Unlike *Smith*, this appeal comes to us following the trial court's judgment granting Respondents' motions to dismiss; not on summary judgment. This procedural distinction, and the corresponding change in our standard of review, alters our analysis and approach to many of the legal issues presented in this appeal. Whether or not Appellants may ultimately prevail on their factual allegations is an issue we do not address. Rather, in reviewing the trial court's judgment granting Respondents' motions to dismiss, we focus on the allegations raised by Appellants in their petition to determine whether sufficient facts have been alleged to support their claims, and to determine if any barriers exist, as a matter of law, to prevent the prosecution of those claims before the trial court.

With these principles in mind, we affirm the judgment of the trial court dismissing the claims of the Cusumanos because the Cusumanos have an adequate remedy at law in their municipal court proceeding. We hold that the trial court erred in dismissing Unverferth's claims under the class action petition on the bases of standing, waiver, and estoppel and reverse the trial courts dismissal of Counts I and IV on the grounds of standing and waiver. We reverse and remand for further proceedings consistent with our opinion the trial court's dismissal of Count I and IV on the grounds of estoppel. With regard to Unverferth's claims that the Ordinance is void because it conflicts with state law, we reverse the trial court's judgment dismissing Count I of the petition declaring the Ordinance valid. We remand this issue for

further proceedings consistent with this opinion, including discovery related to the issue of whether the Ordinance is a valid exercise of Florissant's police power or an unlawful revenue-generating measure. Finally, with regard to Unverferth's due process claims, we reverse the trial court's judgment dismissing Counts I and IV of the petition in part, and affirm in part. We reverse that portion of the trial court's judgment with regard to the lack of notice provided by Florissant on the Notice of Violation and hold that Appellants have pleaded a claim for declaratory judgment under both Florissant's failure to adhere to Rule 37.33 and under Article I, Section 10 of the Missouri Constitution. We remand those issues to the trial court for proceedings consistent with this opinion. We affirm the trial court's dismissal of Counts I and IV on the claims related to the rebuttable presumption and vagueness. We also affirm the trial court's judgment dismissing Unverferth's claims for unjust enrichment and restitution under Counts II and VI.

CLIFFORD H. AHRENS, P.J., Concurs.

LAWRENCE E. MOONEY, J., Concurs in Part and Dissents in Part

LAWRENCE E. MOONEY, Judge.

I concur in the principal opinion with this single reservation: I also would hold that Florissant's ordinance conflicts with state statutes by establishing a rebuttable presumption that the registered owner was the driver.

The Florissant ordinance establishes a rebuttable presumption that the registered owner of a vehicle was its driver at the time of the alleged violation. Certainly, the fact-finder may consider the vehicle's registration in trying to determine who the offending driver was. But he is not free to

infer beyond a reasonable doubt that the registered owner was the driver based solely on the vehicle's registration because such an inference is unreasonable.

The Missouri Supreme Court upheld the constitutionality of a St. Louis parking ordinance in 1949. *City of St. Louis v. Cook,* 359 Mo. 270, 221 S.W.2d 468 (1949). The St. Louis ordinance challenged in *Cook* established a rebuttable presumption that the registered owner of the car was the driver at the time of the parking violation. *Id.* at 468. In 1949, such a presumption may have been reasonable. Often, the head of a household titled the vehicle in his own name and drove the car most frequently. Moreover, meaningfully, the Supreme Court was dealing with a parking ordinance. *Id.* Indeed, the Supreme Court partially justified the presumption from a practical standpoint that the police could not keep watch over all the parked vehicles to determine who drove them. *Id.* at 470. None of these considerations apply to Florissant's red-light ordinance. When the facts justifying a conclusion have changed, so should the conclusion. I see no reason to extend the Supreme Court's reasoning in the *Cook* case beyond the prosecution of parking violations.

But, like the Supreme Court in *Cook,* I think we should consider the context in which the presumption operates because, as in *Cook,* the presumption does not stand in isolation. Here, Florissant tried to convert a moving violation of state law to a non-moving violation of its own ordinance. Here, Florissant failed to report violations to the Director or Revenue for the assessment of points. Here, Florissant failed to conform its violation notice to the mandatory rules established by our Supreme Court, such that the registered owner would have notice of the time, place, and procedure to contest Florissant's ticket. Remarkably, Florissant even had the te-

merity to counsel the alleged violator: "It is in your best interest to pay the ticket." Given the context in which it operates, Florissant did all in its power to render the rebuttable presumption conclusive. I would hold that the presumption that Florissant attempted to impose by this regime is not reasonable and does not accord due process to the registered owner. Indeed, I would conclude that the only presumption present here is Florissant's.