

# SUPREME COURT OF MISSOURI
## en banc

CITY OF ST. PETERS, MISSOURI,    )
    )
                 Appellant,    )
    )
v.    )    No. SC94379
    )
BONNIE A. ROEDER,    )
    )
                 Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY
The Honorable Ted House, Judge

*Opinion issued August 18, 2015*

The City of St. Peters appeals the trial court's dismissal of the city's prosecution of Bonnie A. Roeder for violating ordinance 4536 by failing to stop at a red light while that violation was detected by an automated enforcement system. After a jury found Ms. Roeder guilty of violating ordinance 4536, Ms. Roeder filed a second motion to dismiss, arguing (1) ordinance 4536 conflicts with state law by not assessing points against a violator's driving record; (2) the notice of violation does not contain the information required by Rule 37.33(b); and (3) ordinance 4536 is being applied in violation of her right to equal protection. The trial court sustained Ms. Roeder's motion and dismissed the charge against Ms. Roeder.

On appeal, the city asserts that the trial court erred in dismissing the prosecution because ordinance 4536 does not conflict with state law regarding the assessment of

points, any such conflict is not a viable defense to the city's prosecution, and any invalid provision can be severed from the rest of the ordinance.[1]  This Court finds ordinance 4536 conflicts with section 302.302.1,[2] which requires the assessment of two points for a moving violation, because the ordinance creates a moving violation and states that no points will be assessed.  The portion of ordinance 4536 that conflicts with state law can be severed from the valid portions, but such severance will be given effect prospectively only.  Severance and enforcement of the remaining valid portion of ordinance 4536 against Ms. Roeder would violate due process by imposing a direct and negative consequence of her conviction when the ordinance affirmatively informed Ms. Roeder that a violation of the ordinance would not result in points.  Accordingly, this Court affirms the trial court's judgment dismissing the charge for violating ordinance 4536.

## Factual and Procedural Background

The city enacted ordinance 4536, codified in St. Peters City Code section 335.095, to authorize the installation and use of an automated red light enforcement system.  Ordinance 4536 further creates an offense that occurs when a "person fails to comply with the City Traffic Code and the violation is detected through the automated red light enforcement system."  As relevant to this case, the city's traffic code states, "The driver of any vehicle shall obey the instructions of any official traffic control device."  St. Peters Code section 315.030.

---

[1] The city raises four points relied on, but the first two points both assert that the trial court erred in dismissing the prosecution because ordinance 4536 does not conflict with state law regarding points.  Therefore, the first two points relied on will be considered together.

[2] All statutory references are to RSMo Supp. 2012, unless otherwise indicated.

The automated red light enforcement system consists of cameras and vehicle sensors capable of producing images recording a motor vehicle running a red light. The system produces images of an offending vehicle, the vehicle's license plate, the vehicle's operator, and the traffic control signal. These images are reviewed by an officer of the St. Peters police department. If it is determined that a violation occurred, "the officer may use any lawful means to identify the vehicle's owner." A summons will then be served on the vehicle's owner within 60 days of the violation. The ordinance classifies a violation as an infraction punishable by a fine no greater than $200 and states that "[i]n no case shall points be assessed against any person . . . for a conviction of a violation of the City Traffic Code detected through the automated red light enforcement system." *Id.*

On June 15, 2012, the city issued a notice of violation and summons to Bonnie Roeder. The notice was titled "City of St. Peters, MO Red Light Photo Enforcement Program" and stated that a vehicle registered to Ms. Roeder was in violation of ordinance 4536.[3] Specifically, it stated that a red light camera enforcement system captured her vehicle running a red light. The instructions attached to the notice provided Ms. Roeder three options: (1) pay a $110 fine; (2) submit an "Affidavit of Non-Responsibility" showing either that Ms. Roeder sold the vehicle prior to the violation date or that the vehicle or license plates were stolen at the time of the violation; or (3) appear in court on July 31, 2012, to have the matter reviewed by a municipal judge. The notice stated that the failure to either pay the fine on or before July 31, 2012, or appear in court on that date

---

[3] The notice specifically charged Ms. Roeder with violating city code sections 335.095 and 315.030.

may result in a warrant being issued for Ms. Roeder's arrest. The notice also stated that no points would be assessed to Ms. Roeder's driving record.

Ms. Roeder failed to complete any of the three options, and the matter was set for a municipal division hearing in September 2012. Ms. Roeder failed to appear, and the city charged her with an additional violation of failure to appear. By Ms. Roeder's request, the municipal division then certified the case for a jury trial in the circuit court of St. Charles County. Prior to trial, Ms. Roeder filed a motion to dismiss, asserting the notice of violation violated her due process rights by not providing statements showing probable cause to believe Ms. Roeder was operating the motor vehicle at the time of the violation, ordinance 4536 violated her due process rights by creating a rebuttable presumption that the owner of the motor vehicle was the operator, and ordinance 4536 conflicted with state law by not assessing points. She also asserted an "affirmative defense" of unlawful rulemaking, alleging the city and Missouri department of revenue "engaged in unlawful rulemaking by using Missouri Charge Code Manual No Points Charge for Red Light Cameras" because that charge code was created informally. The trial court overruled Ms. Roeder's motion to dismiss.

The jury trial occurred on September 5, 2013. During trial, the city presented four still photographs showing: (1) Ms. Roeder's motor vehicle traveling toward an intersection but not yet to the stop line; (2) Ms. Roeder's motor vehicle beyond the stop line and in the intersection after the traffic light turned red; (3) the front window of Ms. Roeder's motor vehicle through which Ms. Roeder's face can be seen; and (4) the rear of Ms. Roeder's motor vehicle, including the license plate. The city also played

4

video of the motor vehicle driving through the intersection after the light had turned red.[4] At the close of the evidence, the trial court acquitted Ms. Roeder of the failure to appear charge, and the jury found Ms. Roeder guilty of violating ordinance 4536 and assessed a $110 fine.

Following the court of appeal's ruling in *Unverferth v. City of Florissant*, 419 S.W.3d 76 (Mo. App. 2013), declaring a similar ordinance void, Ms. Roeder filed a renewed motion for acquittal. In her motion, Ms. Roeder asserted three arguments: (1) ordinance 4536 conflicts with state law in that it does not assess points against a violator's driving record; (2) the notice of violation does not contain the information required by Rule 37.33(b); and (3) ordinance 4536 is being applied in violation of her right to equal protection because operators of motor vehicles that they personally own are prosecuted when operators of motor vehicles owned by a trust, corporation, or company are not prosecuted.

The trial court treated the motion as a renewal of Ms. Roeder's motion to dismiss and relied on *Unverferth*, 419 S.W.3d 76, to find that the city's ordinance conflicted with state law by not assessing points against a violator's driving record. The court sustained the motion and dismissed the charge for violating ordinance 4536.

The city appeals. After an opinion by the court of appeals, the case was transferred to this Court. Mo. Const. art. V, sec. 10.

---

[4] On appeal, Ms. Roeder does not contest that this evidence shows she entered the intersection after the traffic light turned red.

## Standard of Review

This Court will affirm a trial court's dismissal if the motion to dismiss can be sustained on any ground alleged in the motion. *Foster v. State*, 352 S.W.3d 357, 359 (Mo. banc 2011). Interpretation of municipal ordinances and determination of whether they conflict with state law are questions of law and reviewed *de novo*. *State ex rel. Sunshine Enters. of Missouri, Inc. v. Bd. of Adjustment of City of St. Ann*, 64 S.W.3d 310, 312-14 (Mo. banc 2002). The rules governing interpretation of a statute are employed when interpreting an ordinance. *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000). Accordingly, the Court will ascertain the intent of the municipality, give effect to that intent, if possible, and consider the plain and ordinary meaning of the language used. *Id.*

## Ordinance Conflicts with State Law

In her original and renewed motions to dismiss, Ms. Roeder claimed ordinance 4536 is void because it conflicts with state law by not assessing points against a violator's driving record. The trial court agreed, finding that a violation of ordinance 4536 is a "moving violation" and, therefore, that the ordinance conflicts with section 302.302.1(1), which provides that points must be assessed for "any moving violation" of a municipal ordinance.

On appeal, the city asserts the trial court erred in dismissing the charge against Ms. Roeder for violating ordinance 4536 because the ordinance does not conflict with state law. The city argues that section 302.302 permits the director of revenue to classify certain offenses as non-point offenses and that the director has exercised this discretion in

6

designating red light camera violations as non-point offenses. The city further maintains that the ordinance complies with state law because, under its authority pursuant to sections 43.505 and 43.512, RSMo 2000, the department of public safety published the Missouri charge code manual with a charge code for a red light camera violation that does not assess points and because the city is required to follow the charge code under section 43.512, RSMo 2000. Alternatively, the city argues that any purported conflict does not provide a defense to the charge against Ms. Roeder because the statutory obligation to impose points for a moving violation is not mandatory and that the trial court erred in not enforcing the ordinance's severability clause.

Courts will construe a municipal ordinance to uphold its validity "unless the ordinance is expressly inconsistent or in irreconcilable conflict with the general law of the state." *McCollum v. Dir. of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995). When the ordinance conflicts with a statute, the ordinance is void. *Id.* Further, section 304.120 provides that "[n]o ordinance shall be valid which contains provisions contrary to or in conflict with this chapter, except as herein provided." "The test for determining if a conflict exists is whether the ordinance permits what the statute prohibits or prohibits what the statute permits." *Page W., Inc. v. Cmty. Fire Prot. Dist. of St. Louis Cnty.*, 636 S.W.2d 65, 67 (Mo. banc 1982) (internal quotations omitted). A municipal ordinance does not conflict with state law by making conduct that is a violation of state law also a violation of the ordinance. *See Strode v. Dir. of Revenue*, 724 S.W.2d 245, 247-28 (Mo. banc 1987). Additionally, municipalities are authorized to "[m]ake additional rules of the road or traffic regulations to meet their needs and traffic conditions." Section 304.120.

7

Section 302.302.1 sets out the system for the assessment of points and provides in pertinent part:

> The director of revenue shall put into effect a point system for the suspension and revocation of licenses. Points shall be assessed only after a conviction or forfeiture of collateral. The initial point value is as follows:
>
> (1) Any moving violation of a state law or county or municipal or federal traffic ordinance or regulation not listed in this section, other than a violation of vehicle equipment provisions or a court-ordered supervision as provided in section 302.303…………………………………………... 2 points

Hence, a conviction for a violation of a municipal ordinance that is a "moving violation" and not otherwise listed in section 302.302.1 requires the assessment of two points against the violator's driving record.

An offense is committed under ordinance 4536 when a "person fails to comply with the City Traffic Code and the violation is detected through the automated red light enforcement system." The city charged Ms. Roeder under ordinance 4536 for failing to comply with the city's traffic code section 315.030, which states that "[t]he driver of any vehicle shall obey the instructions of any official traffic control device." Specifically, the city charged Ms. Roeder with driving through the intersection when the light was red while that violation was detected by an automated enforcement system.

Running a red light, regardless of whether detected by an automated enforcement system, is not an offense specifically listed in section 302.302.1. Nonetheless, it is encompassed in the statute's catch-all category for moving violations not otherwise listed. A "moving violation" is defined as:

> [T]hat character of traffic violation where at the time of violation the motor vehicle involved is in motion, except that the term does not include the

8

driving of a motor vehicle without a valid motor vehicle registration license, or violations of sections 304.170 to 304.240, inclusive, relating to sizes and weights of vehicles.

Section 302.010(13). Failing to obey a traffic control device, or running a red light, is a moving violation as defined by section 302.010 because the motor vehicle involved in the violation is in motion at the time the violation occurs. *See Brunner v. City of Arnold*, 427 S.W.3d 201, 229 (Mo. App. 2013); *Damon v. City of Kansas City*, 419 S.W.3d 162, 187 (Mo. App. 2013); *Edwards v. City of Ellisville*, 426 S.W.3d 644, 664-65 (Mo. App. 2013); *Unverferth*, 419 S.W.3d at 98 ("Common sense and collective experience suggest that a person cannot fail to stop at a red light without being in motion."). Accordingly, section 302.302.1(1) requires that a person found to violate ordinance 4356 by running a red light have two points assessed against his or her driving record. On the other hand, ordinance 4536 states that no points will be assessed. Ordinance 4536 conflicts with state law by prohibiting what state law permits – the assessment of two points for violating ordinance 4536. *See Page W.*, 636 S.W.2d at 67.

Rather than argue that a violation of section 4536 is not a moving violation, the city relies on the language in section 302.302.1 that gives the director of revenue the task of "put[ting] into effect a point system for the suspension and revocation of licenses." The city contends that this language provides the director with discretion to classify certain offenses as non-point offenses. The city ignores the part of the statute that states "[t]he initial point value is as follows" and establishes an initial point value for a number of offenses. If, as the city contends, the statute places the ultimate authority of determining whether points should be assessed with the director of revenue, then the

9

explicit assignment of point values in the statute would be superfluous. It is presumed that the legislature did not insert superfluous statutory language. *Bateman v. Rineheart*, 391 S.W.3d 441, 446 (Mo. banc 2013).

The city also argues that it was required, under sections 43.505 and 43.512, RSMo 2000, to not assess any points for a red light camera violation. Section 43.505, RSMo 2000, designates the department of public safety as "the central repository for the collection, maintenance, analysis and reporting of crime incident activity generated by law enforcement agencies in this state" and instructs the department to "develop and operate a uniform crime reporting system." As the central repository, the department must "publish and make available to criminal justice officials, a standard manual of codes for all offenses in Missouri." Section 43.512, RSMo 2000. "The manual of codes shall be known as the 'Missouri Charge Code Manual', and shall be used by all criminal justice agencies for reporting information required by sections 43.500 to 43.530." *Id.*

The "Missouri charge code" is "a unique number assigned by the office of state courts administrator to an offense for tracking and grouping offenses." Section 43.500(7). It "consist[s] of digits assigned by the office of state courts administrator, the two-digit national crime information center modifiers and a single digit designating attempt, accessory, or conspiracy." *Id.* The Missouri charge code manual for August 2012 to August 2013 contained charge code 9342799.0 for an offense described as "Public safety violation – red light camera (no points)" and indicates that the offense is not reportable to the department of revenue. The city reasons that, because the charge code manual contains a code specifically identifying a red light camera violation as a

10

non-point offense, the more general moving violation catch-all classification in section 302.302.1 must yield to the classification in the charge code.

The city's argument is premised on there being only one charge code applicable to violations of ordinance 4536. The record only contains a small portion of the charge code manual, and the city fails to show that there are no other charge codes applicable to red light violations. The record also does not include evidence of why the charge code on which the city relies contains a description identifying an offense as a non-point offense or why it indicates that an offense is not reportable to the department of revenue. A charge code is used for "tracking and grouping offenses." Section 43.500(7). It reports "information required by sections 43.500 to 43.530," *see* section 43.512, RSMo 2000, but the city fails to explain how those statutes require the reporting of the number of points assigned to an offense or whether an offense is reported to the department of revenue.

Even if the department of public safety was authorized under sections 43.500 to 43.530 to designate the number of points, if any, to be assessed for a particular violation,[5] the charge code manual cannot trump a statute. *See Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 125-26 (Mo. banc 2014) (holding that when a regulation conflicts with a statute, the statute prevails).[6] Section 302.302.1(1) states that "[p]oints shall be assessed

---

[5] The record does not include how the department of public safety determined that a red light camera violation is not assessed points. The city argues that the director of revenue has the authority to determine that no points will be assessed but fails to show that the department of revenue did in fact make such a determination or that the department of public safety obtains information from the director of revenue in compiling the information to be included in the charge code manual.

[6] The city maintains that in using the no-point charge code, it was acting under advice from the state courts administrator's office. Any advice from the state courts

11

. . . as follows: [a]ny moving violation of . . . a municipal . . . traffic ordinance . . . 2 points." Because a failure to stop at a red light, regardless of whether the violation is detected by an automated enforcement system, is a "moving violation," as defined by section 302.010(13), it requires the assessment of two points against a violator's driving record, and the charge code manual is not binding to the extent it states that a red light violation is a no-point offense.[7]

The city further attempts to avoid application of section 302.302.1(1) by arguing that the statutory language stating that the director "shall put into effect a point system" and setting out the point value for each offense is merely directory. Generally, the term "shall" prescribes a mandatory duty but has been interpreted to be directory when the

---

administrator's office does not override state law. Similarly, this Court approves pattern jury instructions to be submitted to juries but such approval does not preclude challenges to the validity of an instruction. When a party proves a pattern instruction does not correctly state the substantive law, submission of the instruction is error. *State v. Carson*, 941 S.W.2d 518, 520 (Mo. banc 1997).

[7] Additionally, the city fails to demonstrate that it is bound to follow the charge code manual in passing ordinances. Section 43.512, RSMo 2000, requires all "criminal justice agencies" to use the manual for reporting information. While the statute does not define "criminal justice agencies," section 43.500(1) defines "administration of criminal justice" as:

> [P]erformance of any of the following activities: detection, apprehension, detention, pretrial release, post-trial release, prosecution, adjudication, correctional supervision, or rehabilitation of accused persons or criminal offenders. The administration of criminal justice shall include criminal identification activities and the collection, storage, and dissemination of criminal history information, including fingerprint searches, photographs, and other unique biometric identification.

Considering the activities that fall within the administration of criminal justice, it seems unlikely that the city's board of aldermen acts as a criminal justice agency when it passes a traffic ordinance.

statute does not provide what result will follow for failing to comply with its terms. *State v. Teer*, 275 S.W.3d 258, 261 (Mo. banc 2009). Section 302.302.1 does not state what results will follow if points are not assessed for an enumerated offense. The absence of a penalty provision, however, does not necessarily prove "shall" is directory. *See id.* Rather, this Court determines whether "shall" is mandatory or directory by considering the context and ascertaining the legislature's intent. *Id.*

The purpose of the point system established in section 302.302 is to protect the public. *Rudd v. David*, 444 S.W.2d 457, 459 (Mo. 1969). This purpose indicates a legislative intent to require the assessment of points for the enumerated offenses because, if the assessment of points were merely discretionary, the point system would do little to protect the public. *See also Edwards*, 426 S.W.3d at 664; *Unverferth*, 419 S.W.3d at 97. Therefore, this Court finds that the assessment of two points for moving violations under section 302.302.1(1) is mandatory. By classifying a moving violation as a non-point offense, ordinance 4536 prohibits what state law permits and is in conflict with state law. *See Page W.*, 636 S.W.2d at 67. *See also Brunner*, 427 S.W.3d at 229; *Edwards*, 426 S.W.3d at 664-65.

<strong>Severance</strong>

Notwithstanding the ordinance's conflict with state law, the city asserts that the trial court erred in dismissing the charge against Ms. Roeder for violating ordinance 4536 because the portion of the ordinance stating no points will be assessed can be severed from the remainder. When an ordinance's provision is found to be invalid, the Court will not declare the entire ordinance void unless it determines that the municipality would not

13

have enacted the ordinance without the invalid portion.[8]  *Pearson v. City of Washington*, 439 S.W.2d 756, 762 (Mo. 1969).  *See also State ex rel. City of St. Louis v. Mummert*, 875 S.W.2d 108, 109-10 (Mo. banc 1994); *Heidrich v. City of Lee's Summit*, 916 S.W.2d 242, 251 (Mo. App. 1995).

In the bill enacting ordinance 4536, the city's board of aldermen found that a vehicle running a red light "is a serious risk to the public by endangering vehicle operators and pedestrians alike, by decreasing the efficiency of traffic control and traffic

---

[8] Section 1.140, RSMo 2000, states:

> The provisions of every statute are severable.  If any provision of a statute is found . . . to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Ms. Roeder argues that section 1.140 does not apply because the invalid portion is not unconstitutional but, rather, conflicts with state law.  Nonetheless, even if the statute does not apply, it does not prevent this Court from using severance in this case.  Section 1.140 was enacted in 1949, and, before that time, the common law doctrine of severability was applied, or at least recognized, in cases in which a provision of the ordinance was found to be in conflict with state law.  *See State ex inf. McKittrick ex rel. City of Springfield v. Springfield City Water Co.*, 131 S.W.2d 525, 532 (Mo. banc 1939); *Ex parte Tarling*, 241 S.W. 929, 933 (Mo. banc 1922); *City of St. Louis v. St. Louis Transfer Co.*, 165 S.W. 1077, 1079 (Mo. 1914); *City of St. Louis v. Grafeman Dairy Co.*, 89 S.W. 617, 619 (Mo. 1905).  The legislature's intent to preempt common law must be clear.  *Overcast v. Billings Mutual Ins. Co.*, 11 S.W.3d 62, 69 (Mo. banc 2000).  This Court has previously determined that the common law doctrine of severability, rather than section 1.140, applies when the procedure used in enacting a statute was unconstitutional.  *See Missouri Roundtable for Life, Inc. v. State*, 396 S.W.3d 348, 353 (Mo. banc 2013).  Section 1.140, does not demonstrate a clear intent to completely preempt the common law doctrine of severability to prevent its use when a provision of an ordinance is found to be invalid due to a conflict with state law.

14

flow efforts, and by increasing the number of serious accidents." The board further determined that use of an automated red light enforcement system had been "proven to significantly improve public safety by reducing the number of red light runners" and that use of such a system in the city was "in the interest of the public health, safety and welfare of the citizens of the City." The ordinance also contains a severability clause that states:

> If any term, condition, or provision of this Ordinance shall, to any extent, be held to be invalid or unenforceable, the remainder hereof shall be in all other respects and continue to be effective and each and every remaining provision hereof shall be valid and shall be enforced to the fullest extent permitted by law, it being the intent of the Board of Aldermen that it would have enacted this Ordinance without the invalid or unenforceable provisions.

The board's findings demonstrate that the board's intent in passing ordinance 4356 was to authorize the installation and use of automated red light enforcement systems as a means to enforce its traffic law prohibiting the running of a red light. The portion of ordinance 4536 stating that no points shall be assessed for a conviction for violating the ordinance does not further that purpose, nor is it necessary to enforce the ordinance. Further, the presence of the severability clause weighs in favor of finding that the board would have passed the ordinance without the portion providing for no points. Because the Court cannot determine that the city would not have passed the ordinance without the portion stating no points will be assessed, the Court will not declare the entire ordinance invalid. *See Pearson*, 439 S.W.2d at 762.

15

After severing that portion of the ordinance, the ordinance is silent regarding the assessment of points, and two points will be assessed, as required by section 302.302.1.[9] At the time Ms. Roeder violated the ordinance, however, the ordinance was written to provide that a person violating the ordinance would not be subjected to the assessment of points. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996). This notion is partly enforced through the *ex post facto* prohibition in the United States and Missouri constitutions by preventing the legislature from passing a law that increases the penalty for crime beyond what the law provided when the crime occurred. *See State v. Harris*, 414 S.W.3d 447, 450 (Mo. banc 2013); *see also* U.S. Const. art. I, sect. 10 and Mo. Const. art. I, sec. 13. Similarly, Missouri's constitutional ban against civil laws retrospective in operation prohibits laws that "create[] a new obligation, impose[] a new duty, or attache[] a new disability with respect to transactions or considerations already past." *Doe v. Phillips*, 194 S.W.3d 833, 850 (Mo. banc 2006) (internal quotations omitted). Further, due process requires fair notice of a penalty such that a defendant must be charged with any fact that increases the maximum penalty for a crime.[10] *See Ring v. Arizona*, 536 U.S. 584, 600 (2002). Such

---

[9] It is not necessary for an ordinance to expressly address the assessment of points because the assessment of points is governed by section 302.302. For example, the state speeding statute, section 304.010, does not state that points will be assessed for a violation or contain a reference to section 302.302.

[10] While municipal ordinance violations are quasi-criminal, *see Strode*, 724 S.W.2d at 247, this Court is informed by these criminal cases.

16

notions of fairness dictate that this Court give effect to the severance and permit enforcement of the remaining valid provisions of ordinance 4536 prospectively only.

The city enacted an ordinance clearly conflicting with state law by providing no points would be assessed when the assessment of points is a direct consequence of a conviction under section 302.302. Though the Court does not find the entire ordinance should be invalidated because the invalid portion can be severed, giving effect to that severance and enforcing the valid provisions in this case would violate Ms. Roeder's right to fair notice of a direct consequence of her conviction. Severance would lead to Ms. Roeder's driver's license being assessed two points when, at the time Ms. Roeder committed the violation, ordinance 4536 expressly stated no points would be assessed. The assessment of two points against Ms. Roeder's driver's license creates a disability that is a direct result of her conviction. Because Ms. Roeder did not have fair notice that points would be assessed at the time of the violation, this Court will not give effect to severance and permit enforcement of the valid portions of ordinance 4536 in Ms. Roeder's case.[11] Without severing the portion of ordinance 4536 stating no points

---

[11] In his dissent, Judge Wilson asserts that this Court has previously found points are not a "punishment." Merely because points are not assessed primarily for punishment does not preclude this Court from finding that due process prohibits assessment of points, a direct and negative effect of a violation of ordinance 4536 when ordinance 4536 expressly notified Ms. Roeder that no points would be assessed. In *Barbieri v. Morris*, this Court found that a person's license may be suspended after being found to be a habitual violator of traffic laws based on convictions that occurred before the enactment of the statute defining "habitual violator." 315 S.W.2d 711, 714-15 (Mo. 1958). The Court noted that the statute was "not retrospective because it merely relate[d] to prior facts or transactions but [did] not change their legal effect." *Id.* at 714. Additionally, the Court found that the defendant was "charged with knowledge that if he were again adjudged guilty of a traffic violation . . . he would be a 'habitual violator of traffic laws.'"

will be assessed, the ordinance conflicts with section 302.302.1 and is void. *McCollum*, 906 S.W.2d at 369.[12]

## Conclusion

Because ordinance 4536 creates a moving violation that requires the assessment of two points against the violator, *see* section 302.302.1., the portion of the ordinance stating no points will be assessed against a violator's driving record conflicts with state law. The invalid portion may be severed from the rest of the ordinance because the city would have enacted the ordinance without the invalid portion. Nevertheless, this Court will give effect to that severance and permit enforcement of the valid portions of ordinance 4536

---

*Id.* at 715. Here, the assessment of points is not a possible collateral consequence that will occur in the future but is a direct result of Ms. Roeder's conviction. Ms. Roeder was not simply uninformed that a violation of ordinance 4536 would have this effect; rather, the ordinance affirmatively stated that points would be not assessed. For this Court to give effect to the ordinance such that points would be assessed against Ms. Roeder's driving license under these circumstances would not comport with due process, regardless of whether the assessment of points is primarily for punishment.

[12] In her respondent's brief, Ms. Roeder raises other arguments that were in her motions to dismiss, including: (1) ordinance 4536 conflicts with state law by placing liability on the owner of motor vehicle; (2) the notice of violation creates an implied rebuttable presumption that the owner of the motor vehicle was operating the vehicle at the time of the violation; (3) the city's prosecution of violations of ordinance 4536 violates her right to equal protection under the law; and (4) the city's process of identifying the operator of the motor vehicle is impermissibly suggestive. The last argument was made in Ms. Roeder's motion to dismiss the failure to appear charge and not in either of her motions to dismiss the charge for violating ordinance 4536. Therefore, the issue is not before this Court. *See Travelers Prop. Cas. Co. of Am. v. Manitowoc Co.*, 389 S.W.3d 174, 176 (Mo. banc 2013). As to the other arguments, it is unnecessary for the Court to reach these issues because it is affirming the trial court's dismissal on other grounds.

prospectively only because severance in Ms. Roeder's case would violate constitutional notions of fair notice.[13]  Therefore, this Court affirms the trial court's judgment.

_____

PATRICIA BRECKENRIDGE, CHIEF JUSTICE


Teitleman and Russell, JJ., and Prokes, Sp.J.,
concur; Stith, J., concurs in part and in result
and concurs in opinion of Draper, J., in separate
opinion filed; Draper, J., dissents in separate
opinion filed; Wilson, J., dissents in separate
opinion filed.  Fischer, J., not participating.

---

[13] In his dissent, Judge Draper opines that this Court should consider Ms. Roeder's rebuttable presumption argument because the presumption violates due process and would invalidate ordinance 4536.  A rebuttable presumption is an evidentiary device and violates due process when it "undermine[s] the factfinder's responsibility *at trial*, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Cnty. Ct. of Ulster Cnty., New York v. Allen*, 442 U.S. 140, 156 (1979) (emphasis added). Judge Draper's dissent accepts Ms. Roeder's mischaracterization of the notice of violation provisions as applying a rebuttable presumption.  While the notice of violation appears not to comply with Rule 37.33 and indicates it is the owner's responsibility to show who committed the violation, nothing in the language of ordinance 4536 or the notice interferes with the factfinder's responsibility at trial, and Ms. Roeder fails to show such a presumption was applied at trial. Moreover, while Judge Stith is correct that the ordinance states that evidence of the recorded image will be submitted into evidence at trial, this evidence is as likely to exculpate as to inculpate the driver, and, therefore, does not create an implied presumption that the owner of the vehicle is the driver.

19



# SUPREME COURT OF MISSOURI
## en banc

CITY OF ST. PETERS, MISSOURI, )
)
    Appellant, )
)
v. )   No. SC94379
)
BONNIE A. ROEDER, )
)
    Respondent. )

### OPINION CONCURRING IN PART AND IN RESULT AND CONCURRING IN DISSENTING OPINION OF JUDGE DRAPER

I concur with the principal opinion's analysis in which it explains that the portion of St. Peters city ordinance 4536 that states that no points will be assessed for its violation conflicts with section 302.302.1, RSMo Supp. 2012, which requires that two points be assessed for moving violations. I also concur in the principal opinion's result. In fact, I concur in all of the principal opinion other than the *dicta* in its final footnote in which it disagrees with Judge Draper's dissenting opinion stating that St. Peters *sub silencio* creates a rebuttable presumption that the owner of the vehicle is the driver.

The principal opinion recognizes that the notice sent by the city expressly states that the burden is on the owner to prove that the owner was not the driver. But, the principal opinion says that this does not constitute a rebuttable presumption because it occurs in the notice and the ordinance itself does not expressly require a similar reversal

1

of the proper burden of proof *at trial.*

Certainly the principal opinion is correct that rules of evidence apply only at trial. But, if the ordinance creates a rebuttable presumption that will apply at trial to shift the burden of proof to the defendant, or reasonably can be read to do so, then to that extent it violates due process and is invalid. That is what I believe to be the case here. As the principal opinion itself notes, the ordinance makes it an offense if a person "fails to comply with the City Traffic Code and the violation is detected through the automated red light enforcement system," *St. Peters City Ordinance 4536*, and the city's traffic code states, "The driver of any vehicle shall obey the instructions of any official traffic control device." *St. Peters Code § 315.030.* To this point, the ordinance does not appear to shift the burden of proof. But, the ordinance nowhere provides that a notice of violation must be sent to the driver of the vehicle, or otherwise requires any effort by the officer or city to identify the driver. Instead, the ordinance provides that if the officer viewing the photograph of the violation finds that the photograph "shows a violation" then the officer "may use any lawful means to identify *the vehicle's owner*" and a summons will issue *to that owner. St. Peters City Ordinance 4536.* The ordinance requires the summons to be accompanied by "a copy of the violation notice … instructions and information regarding the viewing of the recorded image … a statement that the recorded image *will be submitted as evidence* in the Municipal Court proceeding for prosecution of the violation of the applicable Section of the City Traffic Code." *Id.* (Emphasis added).

By stating that the driver shall obey the city's traffic control device – the red light – and that failure to do so is a violation, and by then providing that notice of the violation

2

should be sent to the owner, the ordinance necessarily assumes and is premised on the owner being the driver. In fact, it nowhere provides a mechanism for summoning a non-owner driver. And, the ordinance provides that evidence of the violation will be presented against the owner at trial. While the ordinance does not state expressly that it is the owner's burden to prove that he or she is not the driver, that clearly is how the city reads the ordinance, for that is what the city's notice states. The notice provides that the owner must pay the fine unless the owner shows that he or she was not the driver and identifies the driver or shows he or she falls within the other identified exceptions to owner liability.

While the notice makes express what is only implicit in ordinance 4536, the lack of an express requirement in the ordinance that any summons or notice be sent to the driver, combined with the ordinance's provision that the photographic evidence will be presented against the owner at trial, create the impression that it is ownership that will create the basis for liability at trial. This is because it would be nonsensical to require that a notice be sent only to the owner, and to nowhere require that notice be given to the driver, were the owner not presumptively the driver under the ordinance. Whether or not the ordinance thereby technically includes an implicit rebuttable presumption comparable to the explicit rebuttable presumption invalidated in *Tupper v. City of St. Louis, -- S.W.3d -- (Mo. banc 2015) (No. SC94212)*, it is misleading to the citizens affected by it in that it creates the impression, if not the reality, that it is their burden to prove that they were not the driver and the ordinance should be invalidated on this basis also.

3

For these reasons, I concur in the dissenting opinion of Judge Draper on this issue.


                                                _____

                                                    **LAURA DENVIR STITH, JUDGE**



# SUPREME COURT OF MISSOURI
## en banc

CITY OF ST. PETERS, MISSOURI,    )
                                   )
             Appellant,       )
                                   )
v.                              )     No.  SC94379
                                   )
BONNIE A. ROEDER,        )
                                   )
             Respondent.    )

### DISSENTING OPINION

I respectfully dissent because I believe the validity of ordinance 4536 remains unsettled by the principal opinion's failure to address dispositive issues raised by Bonnie A. Roeder (hereinafter, "Roeder").  Specifically, the question of whether the ordinance is civil or criminal in nature and what effect that analysis has on the rebuttable presumption that arises when the ordinance is applied are crucial to resolve, despite the principal opinion's finding to the contrary.  Although the principal opinion holds it need not address these issues because it affirms the circuit court's dismissal of Roeder's conviction on other grounds, this Court's disposition essentially upholds the ordinance's validity after severing the conflicting language regarding point assessment.  I believe this Court should address Roeder's contentions, which would invalidate the ordinance.  Accordingly, I would affirm the circuit court's judgment dismissing the city's prosecution of Roeder on other grounds and hold ordinance 4536 void.

In her motion to dismiss, Roeder claimed the ordinance contained a rebuttable presumption that the owner committed the violation, and this presumption impermissibly shifted the burden of proof away from the city. Roeder argues the presumption relieves the city of its burden of proving each element of the offense, particularly, the identity of the operator. Roeder claims this creates an affirmative burden on an owner to rebut the presumption and demonstrate his or her innocence by implicating another individual as the guilty operator. The city argues ordinance 4536 is not a strict liability ordinance that creates a rebuttable presumption by its express language. Rather, the city maintains ordinance 4536 requires the city to prove beyond a reasonable doubt that the person charged with violating the ordinance did indeed commit the violation. Further, the city contends only the vehicle's operator can be found guilty of violating the ordinance.

When compared with the language in the other traffic ordinances reviewed by this Court in *City of Moline Acres v. Charles W. Brennan*, -- S.W.3d -- (No. SC94085) (Mo. banc 2015) (a speed camera ordinance that provides, "A violation hereunder is based on ownership, without regard to whether the Owner was operating the motor vehicle at the time of the infraction ….") and *Sarah Tupper, et al. v. City of St. Louis, et al.*, -- S.W.3d -- (No. SC94212) (Mo. banc 2015) (a red light camera ordinance that provides, "A rebuttable presumption exists that such Owner of a motor vehicle operated or used in violation of [the ordinance] … was the operator of the vehicle at the time and place the violation was captured…."), the city is correct. However, ordinance 4536, as applied, creates an implied rebuttable presumption that belies the city's characterization.

2

Ordinance 4536 directs the police officer reviewing the recorded image to "use any lawful means to identify the vehicle's *owner*." Further, the "summons shall be served on the *owner* …." Only if the vehicle is registered to more than one person, then the summons shall be issued to *the registrant* who was "most likely depicted in the recorded image." (Emphasis added to all).

The notice of violation further demonstrates an implied rebuttable presumption exists. The notice informs the owner, "a vehicle *registered in your name* … appears to have run a red light." The notice also states, "Please note that recorded images constitute evidence of a violation of [ordinance 4536.]" The notice also makes clear, "As the *registered owner* of the vehicle described in this Notice, *you are responsible* for paying this fine or appearing in Court …." On the instruction page, the city reiterates that *a vehicle registered to the owner* who received the notice was photographed violating the ordinance. Moreover, the notice provides, "As *the registered owner* or identified driver of the vehicle … we have no choice but to hold you responsible for paying this fine …. Of course, if you were not the driver at the time of the violation, you may appear in Court to identify another driver." Finally, the instructions state, "It is sufficient evidence [under the ordinance], that *the person registered as the owner of the vehicle was operating the vehicle at the time of the violation*." (Emphasis added to all).

Roeder concedes the city's notice of violation and corresponding instructions do not track the language of ordinance 4536 regarding any rebuttable presumption. However, it is clear that, as applied, the city employs a rebuttable presumption that the registered owner committed the violation unless the vehicle happens to be registered to

3

more than one person.  Otherwise, the registered owner is compelled to put forth evidence that the vehicle has been sold or stolen, or the owner must appear in court to identify another driver.  I believe this rebuttable presumption is impermissible.

Law enforcement's use of technology to enforce traffic laws is not a new concept. Police began employing the "time-distance method" of speed measurement in 1902, by concealing themselves at particular distances and using stop watches to measure the time at which the motorist passed each concealed officer.  This information was then telephoned to a third officer positioned further up the road, who could stop the speeding motorist.  *See* Joel O. Christensen, *Wrong on Red: The Constitutional Case Against Red-Light Cameras*, 32 WASH. U. J.L. & POL'Y 443, 451-52 (2010).  Speedometers were commonplace by 1917, and nascent radar technology was employed in the 1940s.  *Id.* at 452.  In 1959, Missouri courts recognized that "a radar speedmeter is a device which, within a reasonable engineering tolerance, and when properly functioning and properly operated, accurately measures speed in terms of miles per hour."  *State v. Graham*, 322 S.W.2d 188, 195 (Mo. App. Spring. Dist. 1959).  Red light cameras were introduced in Europe in the 1960s and 1970s and were imported to the United States in 1994 when New York City launched its red light camera program.  *Wrong on Red*, 32 WASH. U. J. L. & POL'Y 443 at 454.  Today, nearly half of all states use some form of automated traffic enforcement, which includes red light cameras, speed cameras, and speed cameras statewide in work zones.  *See Communities Using Red Light and/or Speed Cameras*, INS. INST. FOR HIGHWAY SAFETY, http://www.iihs.org/iihs/topics/laws/printablelist?print-view (last visited August 12, 2015).

As law enforcement's detection technology evolves, so too should this Court's jurisprudence analyzing these advancements. Even in the context of a civil ordinance, I believe the rebuttable presumption analysis in *City of St. Louis v. Cook*, 221 S.W.2d 468 (Mo. 1949) should be confined to the facts under which *Cook* was decided and not be extended to the automated traffic enforcement mechanisms employed today. In *Cook*, this Court construed a parking ordinance that provided it shall be "*prima facie* evidence" that the person who is registered as the owner committed or authorized the parking violation. This Court held the ordinance did not change the burden of proof the city must carry in making its case. There is a "difference between *the burden of proof* which does not shift and the *burden of evidence*, which may shift to the defendant to produce, if he [or she] desires, evidence which, if believed, will meet a plaintiff's prima facie case." *Cook*, 221 S.W.2d at 469. This Court explained:

> From a practical standpoint it would be impossible for the police department of the City of St. Louis to keep a watch over all parked vehicles to ascertain who in fact operates them. In such a situation and in view of the purpose of City's traffic regulations, the City having shown the vehicle to have been parked in violation of the regulatory ordinance and having shown a defendant to be the person in whose name the vehicle is registered, it would seem an owner-registrant, a defendant, could not be said to be put to too great an inconvenience or to an unreasonable hardship in making an explanation if he desires. The connection between the registered owner of an automobile and its operation is a natural one. While there are no doubt instances where an owner's automobile is used without his authorization, yet it is not generally so. If, in fact, defendant's vehicle was parked at the time without any authorization from defendant, such fact was peculiarly within defendant's knowledge and, if defendant had desired, the fact could have been easily proved with such certainty as to almost entirely preclude a false conviction. In our opinion the inference authorized by the Ordinance No. 41240 is a reasonable one. The ordinance does not make any inferred fact conclusive. And the ordinance does not require that a defendant testify; nor does it deny him his right to make out his defense, or to testify.

*Id*. at 470-71.

Several lower court decisions have questioned *Cook*'s application to red light camera ordinances that contain a rebuttable presumption. In *Unverferth v. City of Florissant*, 419 S.W.3d 76 (Mo. App. E.D. 2013), the majority opinion applied *Cook* and upheld the city's use of the rebuttable presumption that the owner of the vehicle was the operator at the time the violation occurred. *Unverferth*, 419 S.W.3d at 99-100. However, the majority acknowledged, "While such a presumption does have a rational connection with the fact inferred, applying this presumption in 2013 is vastly different and significantly less compelling than in 1949 when *Cook* was decided." *Id*. at 109, n.7. The majority noted that *Cook* did not limit its holding to its facts, and therefore, the court was constrained by *Cook*'s rationale until this Court reconsidered the issue. *Id*. Further, the dissenting opinion in *Unverferth* maintained that, while *Cook*'s presumption was reasonable at the time it was decided, its holding should be confined to parking violations. *Id*. at 109 (Mooney, J., dissenting).

In *Damon v. City of Kansas City*, 419 S.W.3d 162 (Mo. App. W.D. 2013), the red light camera ordinance contained a rebuttable presumption that the owner of the vehicle captured by the camera was also the operator. The court held the challengers were entitled to develop further facts about whether the ordinance was civil or criminal in nature. *Damon*, 419 S.W.3d at 189. If the ordinance were criminal, then the rebuttable presumption contained in the ordinance would be unconstitutional because it would presume a fact that is an element of the offense, which runs afoul the presumption of innocence. *Id*. at 190-91. The court specifically rejected the city's "blanket argument

6

that the rebuttable presumption merely shifts the burden of evidence, not the burden of proof," as held in *Cook*. *Id*. at 189-90. The court also questioned *Cook*'s validity, finding the rationale "outdated" in light of the "substantial transportation developments over the past sixty-four years" and that it involved parking, rather than moving, violations. *Id*. at 191, n.21.

In *Brunner v. City of Arnold*, 427 S.W.3d 201 (Mo. App. E.D. 2013), the red light camera ordinance expressly prohibited photographing the operator committing the violation; instead, the ordinance contained a rebuttable presumption that the owner of the vehicle was the operator at the time and place the violation occurred. The notice of violation allowed the owner to transfer liability to the individual responsible for driving the vehicle at the time of the offense by completing an affidavit of non-responsibility, wherein the owner had to provide the name and address of the operator. *Brunner*, 427 S.W.3d at 206-07. The *Brunner* court elected not to extend *Cook*'s rebuttable presumption analysis beyond the prosecution of parking violations. *Id*. at 231. Further, the court found the red light camera ordinance was criminal in nature, rendering it unconstitutional in light of the impermissible rebuttable presumption. *Id*. at 232-33.

Finally, I believe this Court's analysis in *Tupper*, holding that the City of St. Louis' red light camera ordinance was constitutionally invalid because it created a rebuttable presumption that shifted the burden of persuasion onto the defendant to prove that he or she was not operating the vehicle at the time of the violation, should apply to invalidate ordinance 4536. *See Tupper*, --- S.W.3d --- (Slip op. at pages 14-18). Even though ordinance 4536 does not contain an explicit rebuttable presumption like *Tupper*,

7

ordinance 4536 operates just as the one in *Tupper*. In *Tupper*, the ordinance presumed the owner of the motor vehicle operated in violation of the ordinance was the operator of the vehicle at the time and place the violation was captured by the red light camera. The ordinance further provided the owner could offer a statement by affidavit or under oath at the municipal court proceeding that he or she was not the operator at the time the violation was captured. However, the city court or city counselor had to make a determination that the owner's offer of proof constituted "satisfactory evidence" prior to terminating the owner's prosecution, and if appropriate, the city could issue a citation to the individual clearly identified in the evidence as the operator of the motor vehicle at the time of the violation.

Likewise, ordinance 4536 as applied presumes the owner of the vehicle was the operator at the time of the offense. Ordinance 4536, as applied through its notice provision, states the city has no choice but to hold the registered owner responsible for paying the fine, unless the owner wishes to appear in court to identify another driver. Finally, the instructions state, "It is sufficient evidence [under the ordinance], that *the person registered as the owner of the vehicle was operating the vehicle at the time of the violation*." (Emphasis added). Just like *Tupper*, this scheme effectively "shifts the burden of persuasion, requiring the owner to prove to the fact-finder … that he or she was not operating the vehicle at the time of the violation." *Tupper*, --- S.W.3d --- (Slip op. at page 18). *Tupper* held this presumption was unconstitutional because "it relieves the prosecution from proving an element of the violation charged beyond a reasonable doubt and was impermissible under *Sandstrom v. Montana*, 442 U.S. 510, 517-18 (1979). *Id*.

8

I find the reasoning and analysis of these cases persuasive. In all three automated traffic enforcement cases decided today, each municipality sought to reap the monetary benefits of employing this advanced technology while holding on to the antiquated rebuttable presumption analysis from a 1949 parking ordinance challenge. Today's transportation landscape varies dramatically from the one contemplated in *Cook*, in which the connection between the vehicle's registered owner and its operation was a natural one, especially in instances in which "the head of a household titled the vehicle in his own name and drove the car most frequently." *Unverferth*, 419 S.W.3d at 109 (Mooney, J., dissenting).

It has been aptly noted that with respect to red light camera ordinances, they "explicitly presume that ownership of a vehicle is conflatable with driving the vehicle at a given time. Though rebuttable in name, this presumption is conclusive in practice." *Wrong on Red*, 32 WASH. U. J.L. & POL'Y at 463. This presumption forces vehicle owners to "reconstruct history and disprove the preordained conclusion that they are guilty of the cited offense." *Id*. As pointed out in *Unverferth*, *Damon*, and *Brunner*, multiple driver and vehicle households are commonplace, joint titling of vehicles is frequent, and one can posit several situations wherein the registered owner and the operator of the vehicle may not be the same person at any given time. Thus, the rebuttable presumption contained in the automated traffic enforcement ordinances is distinguishable from the one contemplated in *Cook* because unlike in *Cook*, these ordinances *do* make the inferred fact conclusive, and in order to avoid liability, the owner must submit evidence to prove otherwise. Accordingly, I would confine *Cook*'s

9

application to parking violations and find the rebuttable presumption in the instant case impermissible, rendering ordinance 4536 invalid. I would affirm the circuit court's judgment dismissing the city's prosecution of Roeder.

_____
GEORGE W. DRAPER III, JUDGE

# SUPREME COURT OF MISSOURI
## en banc

CITY OF ST. PETERS, MISSOURI,    )
                                )
              Appellant,      )
                                )
v.                             )     No.  SC94379
                                )
BONNIE A. ROEDER,         )
                                )
              Respondent.    )

## DISSENTING OPINION

The St. Peters ordinance provides that in "no case shall points be assessed against any person, pursuant to section 302.302, RSMo, for a conviction of a violation of the City Traffic Code detected through the automated red light enforcement system."  But running a red light is a "moving violation" whether it is proved by an automated camera or the proverbial station wagon full of unimpeachable eyewitnesses.  As a result, the principal opinion is correct in holding that the "no points" provision of the City's ordinance is void because it conflicts with the requirement in section 302.302.1(1) that two points be assessed for any ordinance violation that qualifies as a "moving violation."  I also agree (reluctantly) there is no basis in the record to hold that the City would not have enacted this ordinance if it had known the "no points" provision would be void.  Accordingly, I agree with the principal opinion that the rest of the ordinance (aside from the "no points" provision) remains enforceable.

I am compelled to write separately, however, because the principal opinion refuses to abide by the sound conclusions it reaches. Even though the principal opinion concludes that the City's ordinance (aside from the "no points" provision) is enforceable, it refuses to enforce either the ordinance or section 302.302 in this case. Instead, it affirms the trial court's dismissal of Roeder's prosecution – not because of any defect in the ordinance – but because "notions of fairness" do not permit Roeder to be assessed points for her violation.

The question of whether to assess points for an ordinance violation is determined solely by section 302.302. This Court has no more authority to override that statute than does the City of St. Peters. If the City's ordinance is enforceable – and the principal opinion holds it is – the responsibility to assess points according to section 302.302 for violations of that ordinance rests solely with the director of the department of revenue. That function is both automatic and ministerial. *Rudd v. David*, 444 S.W.2d 457, 459 (Mo. 1969) (assessment of points under section 302.302 and revocations under section 302.304 are ministerial duties, and the director has no discretion to depart from these statutory mandates). Just as a municipality cannot compel the director to ignore the provisions of section 302.302 on an ordinance-by-ordinance basis, this Court cannot compel the director to do so on a case-by-case basis. Accordingly, I respectfully dissent.

There are two types of challenges to municipal ordinances. The first challenge is that the municipality had no authority to enact the ordinance, either because the municipality acted outside the scope of its delegated authority or because it exercised that authority in a manner prohibited by the state or federal constitution. *City of St. Louis v.*

2

*Evraiff*, 256 S.W. 489, 494 (Mo. banc 1923). Here, there is no doubt that the City has authority to enact this ordinance in the exercise of its police power. Similarly, the ordinance does not violate any substantive prohibition in the state or federal constitutions. Accordingly, the City's ordinance is not subject to the first type of challenge.

The second type of challenge is that a municipal ordinance conflicts with state law, i.e., that it permits what state law prohibits or prohibits what state law permits. *Vest v. Kansas City*, 194 S.W.2d 38, 39 (Mo. 1946). The conflicting municipal ordinance is valid in the sense that the municipality acted with authority and not in a manner prohibited by the state or federal constitution, but it is void because the "powers granted a municipality must be exercised in a manner not contrary to the public policy of the state and any provisions in conflict with prior or subsequent state statutes must yield." *Morrow v. City of Kansas City*, 788 S.W.2d 278, 281 (Mo. banc 1990). *See also McCollum v. Dir. of Revenue*, 906 S.W.2d 368, 369, 1995 WL 555644 (Mo. banc 1995) ("If, however, a municipal ordinance conflicts with a general law of the state, it is void.").

Here, the principal opinion holds that the "no points" provision of the City's ordinance conflicts with state law. I agree. Section 302.302 requires the director of revenue to assess two points for any ordinance violation that qualifies as a "moving violation" under section 302.010(13). The "no points" provision of the City's ordinance, on the other hand, purports to prohibit the director of revenue from assessing points for certain ordinance violations (including running a red light) if the violation is proved by an automatic camera. Because this conflict must be resolved in favor of state law, the "no

3

points" provision of the City's ordinance is "void and unenforceable *ab initio*." *Armco Steel v. City of Kansas City,* 883 S.W.2d 3, 7 (Mo. banc 1994).

The only question remaining is whether the balance of the City's ordinance is enforceable even though the conflict between the "no points" provision of the ordinance and the "two points" provision of section 302.302 renders that part of the ordinance void. "The general rule is that where an ordinance consists of several distinct and independent parts, some of which are void because in contravention of a state statute, this does not affect the validity of other independent provisions of the ordinance." *State ex rel. Hart v. City of St. Louis*, 204 S.W.2d 234, 240 (Mo. banc 1947).[1] The remaining provisions of an ordinance will not be given effect, however, if this Court is convinced that the ordinance would not have been enacted without the conflicting provisions. *See Pearson v. City of Washington*, 439 S.W.2d 756, 762 (Mo. 1969) ("remainder of the ordinance should not be stricken down as 'void' unless it may be found judicially that the City Council would not have passed the entire enactment if it had known of such invalidity.").

As the principal opinion points out, the City's position on this question is stated in the ordinance itself:

> If any … provision of this Ordinance shall, to any extent, be held to be invalid or unenforceable, the remainder shall be valid in all other respects and continue to be effective and each and every remaining provision hereof shall be valid and shall be enforced to the fullest extent permitted by law ….

---

[1] Section 1.140, by its own terms, has no bearing on the issue of whether a void provision of a municipal *ordinance* is sufficiently separable from the remainder of the ordinance to allow the other provisions to be enforced. *See* § 1.140 ("The provisions of every *statute* are severable") (emphasis added). The principle applied in *Hart* needs no such authority, however, as it has been applied by this Court nearly as long as this Court has been evaluating local ordinances. *See, e.g., City of St. Louis v. St. Louis R. Co.*, 1 S.W. 305, 306 (Mo. 1886).

4

Notwithstanding this boilerplate language, I suspect that the "no points" provision was essential to the realpolitik of this ordinance, i.e., to striking a balance between the desire to raise revenues and the risk of outraging its citizens. Suspicions aside, however, there is no evidence in this record to support a conclusion that the City would not have enacted this ordinance if it had known that the "no points" provision would be void *ab initio*. Accordingly, I agree with the principal opinion that the balance of the City's ordinance remains enforceable even without the "no points" provision that is rendered void by its conflict with section 302.302.

After reaching this conclusion, the disposition of the case should have been straightforward. The jury found Roeder guilty of running a red light. The trial court refused to give effect to that verdict solely because it believed the conflict between the "no points" provision of the ordinance and section 302.302 rendered the *entire* ordinance unenforceable. The principal opinion properly rejects that conclusion and holds that the remainder of the ordinance is enforceable. Accordingly, the principal opinion should have remanded the case to the trial court to enter judgment in accordance with the jury's verdict. It refuses to do so, however.

The principal opinion holds that – even though it is proper to separate the "no points" provision from the balance of the City's ordinance and enforce the latter even though the former is void – it will enforce the remainder of the City's ordinance only in

5

the future.[2]  As to Roeder, the principal opinion affirms the dismissal of the charge against her on the ground that the void "no points" provision of the ordinance cannot be separated from the remainder and, therefore, the entire ordinance is unenforceable.  There is no precedent for a prospective-only application of the principles of *Hart* and *Pearson*, and the stated reasons for the principal opinion's conclusion that the remainder of the City's ordinance is enforceable against some people but not others are not sufficient to justify that approach.

The principal opinion asserts that the ordinance provides a "lesser punishment" for a moving violation than is required by state law, and that Roeder lacked "fair notice" of this consequence at the time of her violation. This is incorrect.  More than 40 years ago, this Court rejected the contention that assessing points for a traffic violation is a punishment imposed for that violation.  "The point system here (Sec. 302.302) is a legislative evaluation of the *force and effect of convictions* for traffic violations[.]"  *Rudd*, 444 S.W.2d at 459 (emphasis added) (citing *Jones v. Kirkman*, 138 So. 2d 513, 515 (Fla. 1962)) ("The so-called 'point system' is merely a legislative evaluation of convictions of

_____

[2]  The principal opinion's promise to enforce the remainder of the City's ordinance "prospectively" is a hollow one.  The City's website states:

> The City of St. Peters has reached an agreement with Redflex, the red light camera vendor, to permanently terminate the City's contract effective July 1, 2015.  City staff negotiated with the company to permanently terminate the contract, with the Board of Aldermen passing a resolution directing staff to negotiate to end the contract and the red light camera program in light of the wishes of voters in the November 2014 election.

*See* http://www.stpetersmo.net/red-light-cameras.aspx (last viewed August 13, 2015) (a copy has been placed in the Court file).  The election referred to is the 2014 adoption of an amendment to the St. Charles County Charter banning the use of so-called "red light cameras" in all incorporated and unincorporated areas of the county.  This ordinance is being challenged by some of the municipalities affected, including St. Peters.

6

traffic violations in terms of penalty points which, when accumulated in sufficient quantity during a stated period, lead to suspension of a driver's license."). Indeed, even the ultimate revocation or suspension for accumulated points is not considered "punishment" for the prior offenses: "Any penalty or hardship resulting from revocation or suspension of a driver's license is but incidental because the purpose of the statutes is the protection of the public *not primarily the punishment* of the offender." *Rudd*, 444 S.W.2d at 459 (emphasis added).[3]

In addition to *Rudd*, which rejects the argument that the assessment of points is part of the "punishment" imposed for a traffic violation, such an argument also is inconsistent with the statutory context of section 302.302. For example, if assessing points is part of the "punishment" imposed for a traffic violation, the director of revenue could not assess points for violations that occurred before section 302.302 was enacted. Section 302.308, however, plainly requires the director to do so. *See* § 302.308 (director to assess points based on violations occurring up to six months before date of enactment). S*ee also Barbieri v. Morris*, 315 S.W.2d 711, 714 (Mo. 1958) (finding, under a predecessor statute, that the Legislature intended director to suspend licenses based on convictions that occurred prior to enactment and rejecting the claim that this violated the constitutional ban on retrospective laws). By the same token, this state cannot impose "punishment" for violations that occur in other states, but section 302.160 plainly authorizes the director of revenue to assess points for such violations. Rather than adopt

---

[3]  Notably, this Court's characterization of point as "incidental" answers due process and retrospectivity concerns, whether they are described as punishments or "direct consequences."

7

a construction that subjects sections 302.308 and 302.160 to considerable constitutional doubt, the Court should hold – as it did in *Rudd* – that the General Assembly intended the points system to be a regulatory evaluation of a driver's collective traffic violations and not a method of punishing any (or all) of those violations. *Rudd*, 444 S.W.2d at 459.

Shorn of the misperception that the director of revenue's obligation to assess two points under section 302.302 is part of the "punishment" imposed for violating the City's ordinance, there is no justification for the principal opinion's refusal to act in accordance with its conclusions. If, as the principal opinion holds: (a) the "no points" provision of the City's ordinance is void; but (b) the balance of the ordinance is enforceable, then there is no excuse for the Court not to enter judgment in accordance with the jury's verdict.[4]

Such a judgment would not result in any unfairness to Roeder. The jury found beyond a reasonable doubt that she ran this red light. She does not claim that she was relying on the "no points" provision of the ordinance – or on the identical (and identically erroneous) statement made to her in the notice – when she did so. Even if she had, this argument would fail because section 302.302 was in effect at the time of her violation, and she is presumed to have knowledge of it. Section 302.302's continuous applicability well in advance and throughout the events of this case soundly refutes the principal opinion's suggestion that assessing points would impose an *increased* penalty or a *new* obligation, duty, or disability with respect to Roeder's conduct, or that she lacked fair

---

[4]  The alternative grounds for affirming the trial court asserted by Roeder in her brief (*see* Princ. Op. at p. 18, n.12), fall short of justifying dismissal of the charge against her.

8

notice of the consequences thereof.  *See* Principal Opinion at 16.  Moreover, if her violation had been observed by a police officer or other eyewitness (in addition to the automated system), Roeder could have been prosecuted under the regular traffic ordinance and there would be no question that such a violation would result in points against her license.  Finally, it is not as though Roeder relied on the "no points" provision in the ordinance (or in her notice) in choosing to plead guilty.  She chose to plead not guilty and did so on the basis that section 302.302 trumps the City's ordinance and requires that points be assessed.

Accordingly, there is no basis for dismissing Roeder's prosecution or otherwise failing to give effect to the jury's verdict that she violated the City's ordinance.[5]  The case should be remanded for entry of judgment.  When that judgment is entered, the director of revenue must assess the points required by section 302.302.  The director has no discretion in the matter, and neither the City of St. Peters nor this Court has any authority to prevent the director from fulfilling this ministerial duty.

_____
Paul C. Wilson, Judge

---

[5]  I am inclined to agree with Judge Stith that, to the extent the City construes the ordinance to contain a presumption that the owner of the car was the driver at the time the violation was photographed, such a presumption is unconstitutional.  *See City of Moline Acres v. Brennan*, ___ S.W.3d ___ (Case No. SC94085) (Slip Op. at 10-17).  However, an unconstitutional presumption is not a sufficient basis on which to affirm the dismissal of an information.  *Id.* (Slip Op. at 16-17).  The dismissal might have been affirmed on the alternative ground that the Notice to Roeder failed to state facts showing probable cause that she violated the ordinance, *id.* (Slip Op. at 19-21), but Roeder did not make this argument in the trial court or on appeal.